IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOHN FLYNN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-1369 (RWR) |
| | ) | |
| ARCHITECTURAL SOUTHWEST STONE | ) | |
| COMPANY LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MOTION FOR ENTRY OF DEFAULT JUDGMENT
## AND INCORPORATED MEMORANDUM IN SUPPORT THEREOF

Plaintiffs, by their attorneys, and in accordance with Federal Rule of Civil Procedure 55(b)(2), move this Court to enter a default judgment in favor of the Plaintiffs and against Defendant in the amount of $198,663.63 on the ground that default has been entered against Defendant for failure to answer the Complaint of Plaintiffs. This motion is supported by the Declarations of David F. Stupar, attached hereto as Exhibit A, and Ira R. Mitzner, attached hereto as Exhibit B. The certificate of the Clerk of this Court declaring Defendant in default is attached hereto as Exhibit C. A copy of the Complaint filed by Plaintiffs is attached hereto as Exhibit D.

## FACTS

Plaintiffs, John Flynn, et al., filed the Complaint in this case on. On September 21, 2007, Architectural Southwest Stone Company LLC ("Architectural Southwest") was served with the Summons and Complaint. Defendant has failed to file an Answer to the Complaint. On October 26, 2007, default was entered by the Clerk of this Court against Defendant, Architectural Southwest.

## ARGUMENT

Rule 55 of the Federal Rules of Civil Procedure provides that when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, the clerk shall enter the party's default and "the party entitled to a judgment by default shall apply to the court therefor." Defendant has failed to answer the Complaint, default has been entered by the Clerk, and Plaintiffs are entitled to judgment. Accordingly, Plaintiffs' motion for a default judgment should be granted. *See, e.g.*, *Trustees of the Local 306, United Ass'n. Health & Welfare Fund v. Am. Testing & Inspection, Inc.*, No-88-2274-OG, 1988 WL 134942, *1 (D. D.C. Nov. 30, 1988) (entering default judgment where "defendant has failed to respond at any step of these proceedings or otherwise enter an appearance"); *Sanderford v. Prudential Ins. Co. of Am.*, 902 F.2d 897, 901 (11th Cir. 1990) (affirming entry of default judgment as "[n]either the text of the Federal Rules, nor judicial interpretation placed in the rules by the Federal Courts contemplate that a party may totally ignore pleadings and notices it receives").

DSMDB-2362045v01

## **CONCLUSION**

For the foregoing reasons, a default judgment in favor of Plaintiffs and against

Defendant in the amount of $198,663.63 should be entered.

Date: _Dec 5_____, 2007          Respectfully submitted,

By _____
        Ira R. Mitzner (D.C. Bar No. 184564)
        DICKSTEIN SHAPIRO LLP
        1825 Eye Street, N.W.
        Washington, DC  20006
        (202) 420-2234

Counsel for Plaintiffs

DSMDB-2362045v01

**Exhibit A**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JOHN FLYNN, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 07-1369 (RWR) |
| ARCHITECTURAL SOUTHWEST STONE COMPANY LLC, | ) ) ) | |
| Defendant. | ) ) ) | |

**DECLARATION OF DAVID F. STUPAR IN SUPPORT
OF PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**

Pursuant to 28 U.S.C. § 1746, I, DAVID F. STUPAR, hereby declare as follows:

1.      I am the Executive Director of the Bricklayers & Trowel Trades International Pension Fund ("IPF" or "Fund") and am also an authorized representative to effect collections on behalf of the International Masonry Institute ("IMI") as specified in the General Collection Procedures of the Central Collection Unit ("CCU") of the Bricklayers and Allied Craftworkers ("Collection Procedures" or "Procedures") (attached at Tab 1). I have personal knowledge of the facts stated herein and, if called to testify as a witness, I could and would competently testify as set forth below.

2.      The IPF is a multiemployer employee benefit plan subject to ERISA. The IPF is governed by an equal number of employer-appointed and union-appointed Trustees, pursuant to the Taft-Hartley Act. Benefits under the plan are funded by contributions from participating employers.

3.      The Fund provides pension and other benefits to employees who work in the construction industry under contracts negotiated between Bricklayer local unions and employers.

2357212.01

Pursuant to these contracts, the employers are obligated to make contributions to the Fund in order to fund the benefits provided to the beneficiaries. The Trustees of the Fund have a fiduciary duty under ERISA to collect delinquent employer contributions, and the Trustees can be held personally liable for their failure to do so. 29 U.S.C. §§ 1104, 1109, 1132(g)(2). The Fund is administered in the District of Columbia.

4.    The Trustees adopted the CCU Collection Procedures governing the collection of employer contributions and reports.

5.    Under these Procedures, contributions and reports are due on or before the 15th day of the month ("Due Date") following the month in which work is performed. Once contributions are delinquent, the Procedures authorize the assessment of interest at 15 percent per annum and an additional amount, the greater of 15 percent per annum or 20 percent of the delinquent contributions, in the form of an additional computation of interest or liquidated damages.

6.    I am personally familiar with the account of Architectural Southwest Stone Company LLC ("Architectural Southwest" or "Defendant").

7.    Architectural Southwest, acting through its authorized agent or officer, signed collective bargaining agreements ("Agreements") with the International Union of Bricklayers and Allied Craftsmen Local Union Nos. 9 Michigan and 32 Michigan ("Locals 9 and 32 MI"), which obligated Architectural Southwest to submit monthly reports and payments to the IPF and IMI on behalf of its covered employees pursuant to the foregoing Procedures.

8.    Architectural Southwest has performed work in the jurisdiction of Locals 9 and 32 MI, which is covered by the Agreements.

2

9.    Although Defendant submitted reports to the IPF and IMI for work performed pursuant to the Agreements in the jurisdiction of Locals 9 and 32 MI during the time period January 2006 through October 2007, Defendant failed to submit related contributions. The IPF has prepared a Recap of these hours reported but not paid, based on the reports submitted by Defendant.

10.    As provided for in ERISA Section 502(g)(2)(A), Defendant owes the IPF contributions in the amount of $163,081.72 for work performed during the time period January 2006 through October 2007, as determined by the IPF Recap.

11.    As further provided for in ERISA Section 502(g)(2)(B) and under the terms of the Collection Procedures, interest in the amount of $5,649.38 on such delinquent contributions, calculated at a rate of 15 percent per annum from the Due Date is owed by Defendant. Moreover, pursuant to ERISA Section 502(g)(2)(C)(ii) and the Collection Procedures, liquidated damages in the amount of $20,405.70, calculated at the rate of 20 percent have been assessed on such delinquent contributions due the IPF.

12.    As provided for in ERISA Section 502(g)(2)(A), Defendant owes the IMI contributions in the amount of $17,059.60 for work performed during the time period January 2006 through October 2007, as determined by the IPF Recap.

13.    As further provided for in ERISA Section 502(g)(2)(B) and under the terms of the Collection Procedures, interest in the amount of $673.16 on such delinquent contributions, calculated at a rate of 15 percent per annum from the Due Date is owed by Defendant. Moreover, pursuant to ERISA Section 502(g)(2)(C)(ii) and the Collection Procedures, liquidated damages in the amount of $2,409.22, calculated at the rate of 20 percent have been assessed on such delinquent contributions due the IMI.

2357212.01

14.     As of the date of this Declaration, despite due demand thereof, Defendant has failed to pay moneys due the IPF and IMI in connection with work performed pursuant to the Agreements during the months specified above.

15.     Thus, as provided for in ERISA Section 502(g)(2)(A) and the Collection Procedures, Defendant owes the IPF and IMI $180,141.32 in delinquent contributions as determined by the IPF Recap.

16.     As provided for in ERISA Section 502(g)(2)(B) and the Collection Procedures, Defendant is obligated to pay the IPF and IMI $6,322.54 in interest on such delinquent contributions, calculated from the Due Date at the rate of 15 percent per annum.

17.     As additionally provided for in ERISA Section 502(g)(2)(C)(ii) and the Collection Procedures, Defendant is obligated to pay the IPF and IMI $22,814.92 in liquidated damages on such delinquent contributions, calculated from the Due Date at the rate of 20 percent.

18.     The court fee of $350.00 for filing this action is recoverable under ERISA Section 502(g)(2)(D) and the terms of the Collection Procedures.

19.     The process server's cost of $172.85 for serving the summons and Complaint is recoverable under ERISA Section 502(g)(2)(D) and the terms of the Collection Procedures.

20.     Attorney's fees of $2,956.00, which are recoverable under ERISA Section 502(g)(2)(D) and the terms of the Collection Procedures, have been incurred by the Plaintiffs in their attempt to collect delinquent contributions, interest and liquidated damages due from Defendant.  An accounting of the attorney's fees incurred in this action is presented in the Declaration of counsel to the IPF, which accompanies this Motion for Default Judgment.

4

21.    The total amount owed the IPF and IMI by Defendant in delinquent contributions for the months of January 2006 through October 2007 as determined by the IPF Recap, interest on such delinquent contributions owed the IPF and IMI (calculated at the rate of 15 percent per annum), liquidated damages (calculated at the rate of 20 percent) on such delinquent contributions owed the IPF and IMI, Court filing fee, process server's fee and attorney's fees is $209,801.63.

22.    To date, Defendant has paid Plaintiffs $14,094.00 of the total due the IPF and IMI as outlined above.

23.    Accordingly, Defendant owes Plaintiffs a total of $198,663.63.

I declare under penalty of perjury that the foregoing is true and correct.

Date: _December 5,_____, 2007

_David F. Stupar_
David F. Stupar
Executive Director

5

**Attachment 1**

5/13/02

**GENERAL COLLECTION PROCEDURES OF
THE CENTRAL COLLECTION UNIT OF
<u>THE BRICKLAYERS AND ALLIED CRAFTWORKERS</u>**

These General Collection Procedures govern the collection of delinquencies by the Central Collection Unit of the Bricklayers and Allied Craftworkers ("CCU") on behalf of the following participating entities:  Bricklayers and Allied Craftworkers International Union ("BAC"); Bricklayers and Trowel Trades International Pension Fund ("IPF"); Bricklayers and Allied Craftworkers International Health Fund ("IHF"); International Masonry Institute ("IMI"); Bricklayers and Allied Craftworkers Political Action Committee ("BACPAC"); and Local Officers and Employees Pension Fund ("LOEPF") (collectively "CCU Entities").  IHF and BAC SAVE are covered by Special Collection Procedures. Such Special Collection Procedures shall control when in conflict with these General Procedures.

I.     REPORTS AND PAYMENTS TO CCU ENTITIES

    A.     Due Date

        1.     Contributions and reports to the CCU Entities are due on or before the 15th day of the month following the month for which the contributions are being paid ("Due Date"), unless the collective bargaining agreement imposes a different Due Date.

        2.     Reports of participating employers must be filed each month even if no contributions are due for that month.  All participating employers, whether submitting contributions directly or through a local administrator or local union, must use the standard CCU report form.

        3.     Employer reports will be date-stamped on the day received in the CCU Office, or in the case of local administrators or local unions, on the day received by the local.  The stamped date will be the controlling date with regard to these Collection Procedures.

        4.     If any controlling date under these Collection Procedures falls on a weekend or legal holiday, the applicable date will be the next working day.

5.  The IPF is authorized by other CCU Entities to act on their behalf in litigation.  All references to "CCU Office" in these Collection Procedures may also refer to "IPF Office," as applicable.

B.  Notice Of Delinquency

1.  If the CCU Office has not received payment by the last day of the month of the Due Date, the CCU Office will send a Reminder Notice to the employer.  If payment has not been received 30 days after the Reminder Notice, a Notice of Delinquency will be sent to the employer.

2.  The Notice of Delinquency will advise the employer that required contributions were not received by the Due Date and warn that if the contributions are not received within 15  days (60  days following the Due Date), the employer will be considered delinquent ("Delinquent Date") and will be assessed interest at 15% per annum (retroactive to the Due Date) and may be required to pay Liquidated Damages of 20% of the delinquent amount. The Notice of Delinquency will require the employer to notify the CCU Office within five (5)  days of the date of notice if the employer believes that the Notice of Delinquency was sent in error.

C.  Notice Of Referral To Counsel

1.  If the CCU Office has not received payment within 15  days of the Notice of Delinquency, the CCU Office will send to the employer a Notice of Referral to Counsel.

2.  The Notice of Referral to Counsel will advise the employer that payments were not received by the Delinquent Date and that payments for contributions and interest are due and owing. Unless all sums owed are received by the CCU Office within 10 days following the Notice of Referral to Counsel, liquidated damages up to 20%  of the delinquent contributions or statutory interest may be imposed and the matter automatically will be referred to counsel.  The Notice of Referral to Counsel also will state that counsel will be instructed to seek all sums recoverable, including contributions, interest, liquidated damages or statutory interest, and all attorneys' fees.

II.    COUNSEL

    A.    Procedures

        1.    If CCU has not received the contributions and applicable interest within 10 days of the Notice of Referral to Counsel, the matter automatically will be referred to counsel no later than 15 days from the due date.

        2.    Within 10 days of referral, counsel will send a letter to the employer advising that if payment of contributions, interest and other damages is not received within 10 days, suit will be instituted.

        3.    Suit thereafter will be instituted.

    B.    CCU Policy Following Referral To Counsel

        1.    Following the referral of a matter to counsel, the CCU Office will have no authority to deal with an employer except to discuss computations.

        2.    Counsel shall file suit for all moneys recoverable, including damages that may be recoverable under Section 502(g)(2) of ERISA and also may seek remedies under applicable state law against individual corporate officers and/or shareholders.

        3.    The CCU is authorized to seek legal redress prior to the time that the above procedures are exhausted if, in his sole discretion, the Director concludes that the interests of affected participants require immediate action. If an employer fails to make payment when due, suit may be filed to collect all delinquent contributions, interest and other damages regardless of other exhaustion requirements in these Collection Procedures.

III.    AUDITS

    Audits will be conducted to insure full compliance with employer obligations under collective bargaining agreements. Every employer can expect to be audited at some time. If a delinquency is discovered as the result of an audit, the employer will be assessed the cost of the audit.

1449336 v1; V2BC01!.DOC

DSMDB-1449336v01

A.    Detection Of Delinquent Employers Subject To Audit

1.    At least once every year, the Executive Directors of the IPF and IHF will send information to participants reflecting contributions received from participating employers. The participants will be encouraged to report missing hours to the CCU.

2.    The CCU will take steps to insure that delinquencies of participating employers are recovered.

B.    Audits Performed By Third Parties

1.    The CCU will rely upon audits performed by third parties when CCU determines that they conform to auditing procedures contained in the CCU's Guidelines.

2.    The CCU periodically will monitor the audits of third parties in order to confirm their reliability.

C.    Audits Performed On Employers Contributing Directly To The CCU

1.    The CCU will coordinate with third parties who perform audits on employers contributing directly to CCU and will insure that such audits conform to CCU guidelines.

2.    As to employers contributing directly to the CCU who are not subject to audits by third parties, CCU will perform two types of payroll audits on directly contributing employers in order to insure compliance.

a.    Random Audits -- Audits may be conducted on any participating employer at any time, on a random basis, at the direction of the Director.

b.    Problem Audits -- When the Director receives information from a local union, covered member or other source indicating that an employer may be delinquent, the Director may order that an audit be conducted.

D.    Notification Of Audit Delinquency

1.    The CCU Office will send a Notice of Delinquency to audited employers found to be delinquent stating the amount of additional contributions owing as a result of the audit.

2.    Any unsatisfied audit deficiency will be treated according to the CCU's Collection Procedures following the intervention of counsel.

4

E.    Form of Audits

    1.    All audits will be carried out under procedures formulated by the Director.

    2.    All employer books and records set forth in the audit procedures will be made available to the CCU auditor.

IV.    BONDS

The Director may, in his sole discretion, require an employer to post a cash or surety bond in an amount and under terms necessary to protect the interests of the applicable CCU Entity.

1449336 v1; V2BC011.DOC

DSMDB-1449336v01

**Exhibit B**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN FLYNN, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 07-1369 (RWR) |
| ) | |
| ARCHITECTURAL SOUTHWEST STONE ) | |
| COMPANY LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**DECLARATION OF IRA MITZNER IN SUPPORT OF
PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**

Pursuant to 28 U.S.C. § 1746, I, **IRA R. MITZNER**, hereby declare as follows:

1.    I am a partner with the firm of Dickstein Shapiro LLP and the counsel of record for the Plaintiffs John Flynn, James Boland, Gerald O'Malley, Ken Lambert, Gerard Scarano, H.J. Bramlett, Eugene George, Paul Songer, Charles Verlardo, Matthew Aquiline, Gregory R. Hess, Michael Schmerbeck, Vincent Delazzero, and Benjamin Capp ("IPF"), and Jim Allen, Matthew Aquiline, Lon Best, James Boland, Ted Champ, Raymond Chapman, Vincent Delazzero, Bruce Dexter, John Flynn, Eugene George, Gregory Hess, Fred Kinateder, Dan Kwiatkowski, Ken Lambert, Santo Lanzafame, Dick Lauber, William McConnell, Edward Navarro, Gerald O'Malley, John Phillips, Charles Raso, Mark Rose, Kevin Ryan, Gerard Scarano, Michael Schmerbeck, Paul Songer, Joseph Speranza and Fred Vautour, ("IMI"), in the above-captioned case.  I have personal knowledge of the facts stated herein and, if called to testify as a witness, I could and would competently testify as set forth below..

2.    On September 21, 2007, service of process was effected upon Defendant and a Declaration in Support of Service of Summons and Complaint was filed with the Court on October 10, 2007.

3.    As of this date, no answer to the Complaint has been filed by Defendant.

4.    As set forth in the accompanying Declaration of David F. Stupar, Defendant owes the following sums to Plaintiffs:

| | |
|---|---|
| $ 180,141.32 | Contributions due to the IPF and IMI for work performed in Local 32 MI |
| $ 6,322.54 | Interest payable on above contributions due to the IPF and IMI, calculated from the Due Date at the rate of 15 percent per annum |
| $ 22,814.92 | Liquidated Damages at the rate of 20 percent, assessed on above contributions due to the IPF and IMI |
| $ 350.00 | Filing fee (for U.S. District Court) |
| $ 172.85 | Court filing fee |
| $ 209,801.63 | Subtotal |
| $ 14,094.00 | Less payments made to date by Defendant |
| $ 195,707.63 | Balance Due the IPF and IMI by Defendant for unpaid contributions, interest, liquidated damages, court fees and service of process fees |

5.    Additionally, the Employee Retirement Income Security Act of 1974 ("ERISA") provides for the mandatory award of attorney's fees.  ERISA Section 502(g)(2)(D). Plaintiffs' counsel has charged the Fund less than the firm's market rate in this matter for well-intentioned, public-spirited reasons.  Counsel for Plaintiffs has offered this reduced fee in order to mitigate financial hardships to the Fund, which provides retirement benefits to members of the International Union of Bricklayers and Allied Craftworkers.  We believe that our efforts help to ensure the viability of the Fund and, in turn, the welfare of those participants and beneficiaries who depend on their pensions for income after retirement.

2

6.  Counsel for the Funds, consistent with the decision of the United States Court of Appeals for the District of Columbia Circuit in *Board of Trustees of the Hotel and Restaurant Employees Local 25 and Employers' Health and Welfare Fund v. JPR, Inc.*, 136 F.3d 794, 800-808 (D.C. Cir. 1998), on remand, 1999 WL 1567733 (D.D.C Sept. 10, 1999), and for the reasons set forth in paragraph 5 above, therefore seeks to recover counsel's market rates in this action rather than the reduced fee charged to the Fund.

7.  The fees incurred in this action to date, calculated according to the normal billing rates for Dickstein Shapiro LLP in effect currently or at the time services were performed for IPF matters, are as follows:

|  | Hours | Per Hour | Total |
|---|---|---|---|
| Ira R. Mitzner (Partner) | 1.60 | $535.00 | $856.50 |
| Claudette Elmes (Paralegal) | 10.50 | $200.00 | $2,100.00 |
| **Total** | **12.10** | | **$2,956.00** |

8.  The default of Defendant for failure to answer was entered by the Clerk of this Court on October 26, 2007.

9.  We therefore pray for entry of default in favor of Plaintiffs in the total amount of $198,663.63.

I declare under penalty of perjury that the foregoing is true and correct.

Date: Dec. 5, 2007

_____
Ira R. Mitzner

3

DSMDB-2361984v01

**Exhibit C**

Default - Rule 55A (CO 40 Revised-DC 02/00)

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FLYNN et al

_____

Plaintiff(s)

Civil Action No.  07-cv-01369-RWR

V.

ARCHITECTURAL SOUTHWEST STONE
COMPANY LLC

_____

Defendant(s)

RE:

## DEFAULT

It appearing that the above-named defendant(s) failed to plead or otherwise defend this action

though duly served  with summons and copy of the complaint      on      September 21, 2007      , and an

affidavit on behalf of the plaintiff having been filed, it is this 26th day of ___October___ , _2007_ declared

that  defendant(s) is/are in default.

NANCY MAYER-WHITTINGTON, Clerk

By: _____
                /s/ Jackie Francis
                  Deputy Clerk

**Exhibit D**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN FLYNN, JAMES BOLAND, GERALD O'MALLEY,      )
KEN LAMBERT, GERARD SCARANO, H. J. BRAMLETT,    )
EUGENE GEORGE, PAUL SONGER, CHARLES             )
VELARDO, MATTHEW AQUILINE, GREGORY R. HESS,     )
MICHAEL SCHMERBECK, VINCENT DELAZZERO,          )
and BENJAMIN CAPP,                              )
as Trustees of, and on behalf of, the           )
BRICKLAYERS & TROWEL TRADES INTERNATIONAL       )
PENSION FUND,                                   
   620 F Street, N.W.
   Washington, DC  20004
   (202) 783-3788,

   and

JIM ALLEN, MATTHEW AQUILINE, LON BEST, JAMES    )
BOLAND, TED CHAMP, RAYMOND CHAPMAN,             )
VINCENT DELAZZERO, BRUCE DEXTER, JOHN           )
FLYNN, EUGENE GEORGE, GREGORY HESS, FRED        )
KINATEDER, DAN KWIATKOWSKI, KEN LAMBERT,        )
SANTO LANZAFAME, DICK LAUBER, WILLIAM           )
MCCONNELL, EDWARD NAVARRO, GERALD               )
O'MALLEY, JOHN PHILLIPS, CHARLES RASO, MARK     )
ROSE, KEVIN RYAN, GERARD SCARANO, MICHAEL       )
SCHMERBECK, PAUL SONGER, JOSEPH SPERANZA,       )
and FRED VAUTOUR                                )
as Trustees of, and on behalf of, the           )
INTERNATIONAL MASONRY INSTITUTE,                )
   620 F Street, N.W.                           )
   Washington, DC  20004                        )
   (202) 783-3788,                              )
                          )
        Plaintiffs,                           )
                          )
        v.                                    )   Civil Action No.
                          )
ARCHITECTURAL SOUTHWEST STONE                   )
COMPANY LLC                                     )
   27599 Schoolcraft Road                       )
   Livonia, Michigan, 48150,                    )
                          )
        Defendant.                            )
                          )

Case: 1:07-cv-01369
Assigned To : Roberts, Richard W.
Assign. Date : 7/27/2007
Description: Labor-ERISA

2293558

## COMPLAINT

Plaintiffs, by their attorneys, DICKSTEIN SHAPIRO LLP, complaining of the Defendant, allege as follows:

### CAUSE OF ACTION
### Jurisdiction and Venue

1.    This is an action brought by the fiduciaries of the Bricklayers & Trowel Trades International Pension Fund ("IPF"- or "Fund"), and the fiduciaries of the International Masonry Institute ("IMI") to enforce the terms of the Plan and Trust Agreements adopted by the IPF and IMI, and the provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). This action arises under the laws of the United States, specifically Section 502(a)(3), 502(g)(2), and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3), 1132(g)(2), 1145. Pursuant to Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1), jurisdiction is therefore conferred on this Court as to the claims brought on behalf of the IPF and IMI.

2.    The IPF and IMI are administered in the District of Columbia. Venue for the claims asserted by the IPF and IMI is conferred on this Court pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), which provides:

> (2) Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

2

**Parties**

3.    Plaintiffs, John Flynn, James Boland, Gerald O'Malley, Ken Lambert, Gerard Scarano, H. J. Bramlett, Eugene George, Paul Songer, Charles Velardo, Matthew Aquiline, Gregory R. Hess, Michael Schmerbeck, Vincent DeLazzero and Benjamin Capp, are Trustees of, and sue on behalf of, the IPF.  The IPF is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37).  The IPF trustees bring this action on behalf of, and for the benefit of, the beneficiaries of the IPF in their respective capacities as fiduciaries.

4.    The IPF is also authorized to effect collections on behalf of the IMI, pursuant to a written Assignment of Claims and the *Collection Procedures of the Central Collection Unit of the Bricklayers and Allied Craftworkers* ("Collection Procedures").

5.    Plaintiffs, Jim Allen, Matthew Aquiline, Lon Best, James Boland, Ted Champ, Raymond Chapman, Vincent Delazzero, Bruce Dexter, John Flynn, Eugene George, Gregory Hess, Fred Kinateder, Dan Kwiatkowski, Ken Lambert, Santo Lanzafame, Dick Lauber, William McConnell, Edward Navarro, Gerald O'Malley, John Phllips, Charles Raso, Mark Rose, Kevin Ryan, Gerard Scarano, Michael Schmerbeck, Paul Songer, Joseph Speranza and Fred Vautour, are Trustees of, and sue on behalf of the IMI.  The IMI is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37).  The IMI trustees bring this action on behalf of, and for the benefit of, the beneficiaries of the IMI in their respective capacities as fiduciaries.

6.    Defendant, Architectural Southwest Stone Company LLC ("Architectural Southwest" or "Defendant") is, and at all times hereinafter mentioned was, a company maintaining offices and conducting business in the state of Michigan.

2293558

7.    Defendant employs or has employed members of the International Union of Bricklayers and Allied Craftsmen and its affiliated local unions ("Union").

## Violation Charged

8.    Architectural Southwest Stone Company LLC acting through its authorized agents or officers, executed collective bargaining agreements with the Union.  Those collective bargaining agreements are annexed hereto as Exhibits A and B and are hereinafter referred to as the "Agreements."

9.    Pursuant to the Agreements, Defendant agreed to make certain payments to the IPF and IMI on behalf of covered employees of Defendant.

10.    Having submitted some contributions, Defendant has demonstrated an awareness of the obligation to make those payments.

11.    Based on a Recap prepared by the IPF of employer monthly reports submitted by Architectural Southwest, Defendant owes the IPF and IMI contributions in the amount of $69,621.29 for work performed during the months of June 2005 through April 2007.

12.    Under the terms of the Plan and Trust Agreements adopted by the IPF interest in the amount of $6,490.55 from the Due Date at the rate of 15 percent per annum and liquidated damages of $11,071.69 calculated at the rate of 20 percent have been assessed on such delinquent contributions determined due by the Recap.

13.    Plaintiffs have brought this action in faithful performance of the fiduciary duties imposed upon them under Section 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1).  Plaintiffs have been, and are, incurring additional attorney's fees as a direct result of Defendant's failure to make contributions in accordance with the terms and conditions of the Agreements.

4

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

1.  For the total amount of $87,533.53, which is constituted as follows:

a.  For unpaid contributions in the amount of $69,621.29 payable to the IPF, and IMI for the time period June 2005 through April 2007, plus any and all additional amounts found to be due and owing through the date of judgment (ERISA Section 502(g)(2)(A); Collection Procedures);

b.  For interest in the amount of $6,490.55 assessed on such unpaid contributions, calculated at 15 percent per annum from the Due Date (ERISA Section 502(g)(2)(B); Collection Procedures);

c.  For an additional liquidated damages in the amount of $11,071.69, assessed on such unpaid contributions, calculated at the rate of 20 percent per annum from the Due Date (ERISA Section 502(g)(2)(C)(ii); Collection Procedures);

d.  For the costs of filing this action in the amount of $350.00 (ERISA Section 502(g)(2)(D));

2.  In the amount of Five Thousand Dollars ($5,000.00), and such additional amounts as may be incurred, representing attorney's fees and costs of this action (ERISA Section 502(g)(2)(D)).

3.  That Defendant be directed to comply with its obligations to submit all required reports and to make all contributions due and owing to the IPF and IMI and to pay the costs and disbursements of this action.

5

2293558

4.  Such other relief as this Court deems appropriate, including judgment for any contributions and interest thereon that may accrue subsequent to the filing of this complaint, as well as any resulting statutory damages thereon under ERISA.

Dated:  July 27, 2007

By: _Ira R Mitzner_ 

Ira R. Mitzner, DC Bar No. 184564
DICKSTEIN SHAPIRO  LLP
1825 Eye Street, NW
Washington, DC  20006
(202) 420-2200

Attorney for Plaintiffs

6

EXHIBIT A

RECEIVED OCT - 9 1998

*ProTile 31 MI*

*Wages added completed 12/1 Annie*

1998 - 2000

# AGREEMENT

Entered into between

## AREA INDEPENDENT TILE CONTRACTORS

and

## INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS LOCAL 9, MICHIGAN AFL-CIO

For

## TILE, TERRAZZO AND MOSAIC WORKERS AND FINISHER/ASSISTANT WORKERS LANSING CHAPTER

MI9862-A

## TILE, TERRAZZO AND MOSAIC WORKERS
### AND FINISHER/ASSISTANT WORKERS

This Agreement, made and entered into by and between the Area Independent Tile Contractors, for and on behalf of themselves and other Employers who may become signatory, hereinafter referred to as "Employer" or "Employers", and BAC Local 9, Michigan (Lansing Chapter and Grand Rapids Chapter) of the International Union of Bricklayers and Allied Craftworkers for its members doing tile, terrazzo and mosaic work and plasterers and cement finishers in Isabella and Gratiot counties only, hereinafter referred to as the "Union", or "Employee". The terms of this Agreement shall continue in full force and effect from May 1, 1998 through April 30, 2000.

It is further agreed and understood that the liability of the Employers who have authorized the negotiation and execution of this Agreement shall be several and not joint.

### ARTICLE I-A
### GEOGRAPHICAL JURISDICTION

This agreement shall cover new constructions, maintenance, repair and renovation within the jurisdiction of BAC Local 9 Michigan (Lansing Chapter) as chartered by the International Union of Bricklayers and Allied Craftworkers as follows: all of Clinton County; all of Ingham County except Onondaga, Leslie, Bunker Hill and Stockbridge Township; all of Eaton County; all of North Plains, Lyons, Portland and Danby Townships in Ionia County; and Conway, Handy and Iosco Townships in Livingston County; and all of Isabella and Gratiot Counties. (Grand Rapids Chapter jurisdiction to follow) Kent, Lake, Mason, Mecosta, Montcalm, Muskegon, Newaygo, Oceana, Osceola, and all of Ionia County, with the exception of four townships extending along the Clinton County line, which includes the town of Portland. That part of Allegan County north of a line west and east through Fennville and east to the Kent and Ottawa County line, the four northeast townships of Allegan County that holds the villages of Hopkins, Bradley, Dorr and Green Lake. The north eight townships of Barry County including the City of Hastings . All of Ottawa County that part bounded by a line extending west of Sparta to Nunica Rd, then directly south to the Meridian Line.

### ARTICLE I-B
### GEOGRAPHICAL JURISDICTION - FINISHERS

This Agreement shall cover new constructions, maintenance, repair and renovation within all counties in Michigan with the exception of counties covered by Bricklayers and Allied Craftworkers Local 32 (Wayne, Oakland, Monroe, Macomb .

### ARTICLE II
### INTENT AND PURPOSE

SECTION 1. Intention. It is the intent and purpose of the parties hereto that this Agreement will promote and improve industrial and economic relationships between the Employer and the Union in the construction industry for the jurisdiction of the Union, excluding highway work, and to set forth herein the basic Agreement covering the rates of pay, hours of work and conditions of employment and conditions of employment to be observed between the parties hereto.

1

MI9862-A

Union, as defined in Article I-A and I-B of this Agreement, and in the Constitution, Rules of Order and Codes of the International Union of Bricklayers and Allied Craftworkers, for the purpose of collective bargaining as provided for in the Labor Management Relations Act of 1947, as amended.

SECTION 3.  Equal Treatment.  If the Union shall furnish Employees to any Employer in the geographical jurisdiction of this Agreement for the type of work covered by this Agreement upon any more favorable terms or conditions than those contained herein, the Union agrees that such more favorable terms and conditions shall automatically be extended to the Employers covered by this Agreement.  It shall be the duty of any member of the signatory parties to this Agreement to immediately report to their respective organizations, any violations of the agreed rate of wages, reimbursed expenses, or any other violations of this Agreement.

### ARTICLE III
### EMPLOYMENT

SECTION 1.  Union Security.  The Union shall be given equal opportunity to furnish competent workmen upon notification to the union of the number of men needed.  The Employers agree that in the employment of workmen to perform the various classifications of labor required in the work under this Agreement, they will not discriminate against said applicants because of membership or non-membership in the Union.  The Union, in its referral of applicants to the Employers, agrees that it will not discriminate against said applicants because of membership or non-membership in the Union.  Each Employee shall, as a condition of employment thereafter, become and remain a member of the Union in good standing by tendering his initiation fee and periodic dues for the term of this employment on and after eight (8th) calendar day, beginning with the first day of his employment by any Employer covered by this Agreement, or on and after the eight (8th) calendar day following the effective date of this Agreement, whichever is the latter.  Membership in the Union shall be available to each Employee on the same conditions which govern membership for other Employees.

The Employer shall be furnished notice in writing by the Union, signed by the proper officer, setting force that the Employee has refused to join the Union, although he has been offered membership on the same terms as other members, or that the Employee's membership in the Union has been terminated for reasons of nonpayment of regular dues or regular initiation fees, and that the union requests that said Employee be discharged for one of the above reasons.

Traveling Contractors.  When the Employer has any work specified in Article XIII of this Agreement to be performed outside of the area covered by this Agreement and within the area covered by an Agreement with another affiliate of the International Union of Bricklayers and Allied Craftworkers, the Employer agrees to abide by the full terms and conditions of the Agreement in effect in the job site area.  Employees covered by this Agreement shall be paid at least the established minimum wage scale specified in Section VIII of this Article, but in no case less than the established minimum wage scale of the Local Agreement covering the territory in which such work is being performed plus all contributions specified in the job site Local Agreement.  The Employer shall in all other matters be governed by the provisions established in the job site Local Agreement.  If Employees are sent to work on a project in an area where there is no Local Agreement covering the work specified in Article XIII of this Agreement, the full terms and conditions of this Agreement shall apply.

MI0862-A

Employer, to take any action which violates the provisions of the Labor Management Act of 1959, as the same now exist or may hereinafter be amended. The Employer shall be a liberty to employ whomever it sees fit and the Employer shall be the judge of the work to be performed.

SECTION 3. <u>Ratio.</u> It shall be understood that Employers working within the area covered by this Agreement shall employ 75 percent of Employees from said geographical area. A resident of this geographical area shall be considered as a person who has established a permanent residence for a period of not less than sixty (60) days prior to the start of a job.

# ARTICLE IV
## EQUAL EMPLOYMENT OPPORTUNITY

It is a condition of this Agreement to provide equal opportunity in employment for all qualified persons and to prohibit discrimination in employment because of race, sex, veteran status, disability, creed, color, age or national origin. There shall be full compliance with all applicable Federal and State statues, regulations, rules and orders of appropriate Federal and State agencies having jurisdiction over the subject matter of discrimination in employment.

# ARTICLE V
## SUBCONTRACTING

Employers party to this Agreement agree that they will not enter into a contract or subcontract for work covered by this Agreement to be done at the site of construction, building, repair, or alteration with any other Employer unless such Employer agrees to pay wages, other economic benefits and standards not less than those contained in this Agreement.

# ARTICLE VI
## HOURS

SECTION 1. <u>Regular Day.</u> Eight (8) hours shall constitute a days work between the hours of 7:00 a.m. and 5:30 p.m., Monday through Friday inclusive, except for shift work hereinafter described, and pay for time worked during these hours shall be at the regular wage rate. Any changes in working hours because of shift schedule to be adjusted accordingly.

SECTION 2. Workmen shall be a their regular place of work at the starting time, and shall remain at their place of work until the regular quitting time.

SECTION 3. <u>Overtime and Holidays.</u> Time and one half shall be paid for all time worked before and after the regular working hours Monday through Saturday. Double time shall be paid for all time worked on Sundays, New Year's Day, Decoration Day, Fourth of July, Labor Day, Thanksgiving and Christmas. No work shall be performed on Labor Day except to save life or property.

SECTION 4. <u>Reporting Time and Show Up.</u> If any Employer or his foreman requests a given number of Employees to start work at a specific time and than fails to start this given number of Employees who are on the job at the specified time, such Employees shall receive two (2) hours pay; when the job is located fifty (50) miles or more from an Employee's residence and such Employee is not put to work (as provided above), such Employee shall receive four (4) hours pay.

3

MI 9862-A

Employee having been employed in any period of seven (7) working days before said holiday for the holiday by the Employer. All eligible employees to be paid eight (8) hours pay at the regular straight time hourly rate.

## ARTICLE VII
## SHIFT WORK

When Employees are required to work on a shift it shall be as follows: First shift, eight hours work for eight hours pay; second shift, seven and a half hours work for eight hours pay; third shift, seven hours work for eight hours pay. Special shifts are permitted to accommodate job and site conditions. The Employer and the Union shall mutually agree to the working hours.

## ARTICLE VIII-A
## TILE, TERRAZZO AND MOSAIC WORKERS
## WAGES AND FRINGE BENEFITS

SECTION 1. Mechanics Wages (Lansing Chapter). Effective first full pay period on or after

| | May 1, 1998 | June 1, 1998 | August 1, 1998 |
|---|---|---|---|
| **TILE, TERRAZZO AND MOSAIC** | | | |
| Base rate (per hour) | $19.64 | $19.64 | $19.34 |
| Local dues check off (deduct) | (.56) | (.59) | (.58) |
| Int'l dues check off (deduct) | (.23) | (.24) | (.24) |
| Health and welfare | 2.60 | 2.60 | 1.20 |
| Local pension | 1.00 | 1.00 | .90 |
| Int'l pension | .80 | .80 | .90 |
| IMI | .10 | .10 | .10 |
| Total | $24.14 | $24.14 | $24.14 |

**Wage increase 5/1/99 - $.35 base rate.
              .15 fringe benefits

Wage increase 11/1/99 - $.35 base rate
              .15 fringe benefits

## ARTICLE VIII-B
## TILE, MARBLE AND TERRAZZO FINISHERS
## WAGES AND FRINGE BENEFITS

SECTION 1. Helper Wages (Lansing Chapter) Effective first full pay period on or after

| | May 1, 1998 | June 1, 1998 | August 1, 1998 |
|---|---|---|---|
| **FINISHERS** | | | |
| Base rate (per hour) | $14.62 | $14.62 | $14.47 |
| Local dues check off (deduct) | (.41) | (.44) | (.43) |
| Int'l dues check off (deduct) | (.18) | (.19) | (.18) |
| Int'l health and welfare | 3.00 | 3.00 | 3.00 |
| Int'l pension | 1.05 | 1.05 | 1.20 |
| IMI | .10 | .10 | .10 |
| Total | $18.77 | $18.77 | $18.77 |

4

RECEIVED OCT - 9 1998

MI9862-A

.15 fringe ben

*Wage* increase 11/1/99 - $.35 base rate
.15 fringe benefits

### BASE MACHINIST  B3

| | May 1, 1998 | June 1, 1998 | August 1, 1998 |
|---|---|---|---|
| Base Rate | $16.20 | $16.20 | 16.05 |
| Local Dues Check-Off (deduct) | (.46) | (.49) | (.48) |
| International Dues Check-Off (deduct) | (.18) | (.20) | (.20) |
| International Health and Welfare | 3.00 | 3.00 | 3.00 |
| International Pension | 1.05 | 1.05 | 1.20 |
| IMI | .10 | .10 | .10 |
| Total | $20.35 | $20.35 | $20.35 |

**Wage increase 5/1/99 - $.35 base rate.
.15 fringe benefits

Wage increase 11/1/99 - $.35 base rate
.15 fringe benefits

### ARTICLE VIII-C

### TILE, MARBLE & TERRAZZO WORKERS
### WAGES AND FRINGE BENEFITS
### (Grand Rapids & Muskegon Chapter)

Mechanics Wages (Grand Rapids & Muskegon Chapter) Effective first full pay period on or after:

EFFECTIVE THE FIRST FULL PAY PERIOD ON OR AFTER

| | May 1, 1998 | June 1, 1998 | August 1, 1998. |
|---|---|---|---|
| **TILE, TERRAZZO AND MOSAIC** | | | |
| Base rate (per hour) | $19.64 | $19.64 | $19.34 |
| Local dues check off (deduct) | (.56) | (.59) | (.58) |
| Int'l dues check off (deduct) | (.23) | (.24) | (.24) |
| Health and welfare | 2.60 | 2.60 | 2.60 |
| Local pension | 1.00 | 1.00 | 1.20 |
| Int'l pension | .80 | .80 | .90 |
| IMI | .10 | .10 | .10 |
| Total | $24.14 | $24.14 | $24.14 |

5

RECEIVED OCT - 9 1998

MI9862-A

## TILE MARBLE & TERRAZZO FINISHERS

Helpers Wages:(Grand Rapids & Muskegon Chapter)Effective first full pay period on or after:

| FINISHERS | May 1, 1998 | June 1, 1998 | August 1, 1998 |
|---|---|---|---|
| Base rate (per hour) | $14.62 | $14.62 | $14.47 |
| Local dues check off (deduct) | (.41) | (.44) | (.43) |
| Int'l dues check off (deduct) | (.18) | (.19) | (.18) |
| Int'l health and welfare | 3.00 | 3.00 | 3.00 |
| Int'l pension | 1.05 | 1.05 | 1.20 |
| IMI | .10 | .10 | .10 |
| Total | $18.77 | $18.77 | $18.77 |

**Wage increase 5/1/99 - $.35 base rate.
.15 fringe benefits

Wage increase 11/1/99 - $.35 base rate
.15 fringe benefits

(a)    The Union may allocate all or any portion of the wage increases among the various fringe benefits funds.

(b)    Finisher trainees shall receive sixty (60%) percent of the base rate (Article VIII-B) for the first quarter and ten (10%) percent increase per quarter until the aforementioned rates are met. Payments to Health and Welfare, and Pension deductions shall begin on the first day of employment.

(c)    Residential rate is One and 00/100 ($1.00) dollar per hour less, on the base rate, to cover Apartment Houses, Condos and Single Housing Units.

(d)    Base rate will increase fifty-five ($.55) cents per hour for Chemical Trowel on Vinyl.

(e)    In the event a Terrazzo Assistant operates any kind of base machine for less than four (4) hours, he shall be paid at the rate provided for base machine operators for the period of time worked on such machines. Whenever such Assistant shall so engage for a period of four (4) hours of the day for which he is compensated.

Cement Finishers and Plasterers, Gratiot and Isabella Counties only, fifty cents ($.50) per hour less than the above base rate.

SECTION 2.  In addition to the wages and other payments herein provided for, the Employer agrees to pay the contributions specified in Article VIII-A and VIII-B to the International Pension Fund, the International Health Fund, the MI BAC Pension Fund, and the MI BAC Health & Welfare Fund for the term of this contract.

6

RECEIVED OCT - 9 1998

MI9862-A

International Health Fund, MI BAC Pension Fund and MI BAC Health Fund
(see Article VIII-A and VIII-B) for each hour which a covered employee works.

Contributions shall be paid on behalf of any Employee starting with the Employee's first day of employment in a job classification covered by this Agreement. This includes, but is not limited to; journeymen helpers, trainees, probationary employees and apprentices.

The payments to the Michigan BAC Health Fund required above shall be made to the Michigan BAC Health Fund, which was established under an Agreement and Declaration of Trust, dated November 16, 1964, with subsequent amendments being added. Employer agrees to be bound by and to the said Agreement and Declaration of Trust and all such amendments, as though he had actually signed and same.

The payments to the Michigan BAC Pension Fund required above shall be made to the Michigan BAC Pension Fund, which was established under an Agreement of Declaration of Trust, dated May 1, 1989, with subsequent amendments being added. Employer agrees to be bound by and to the said Agreement and Declaration of Trust and all such amendments, as though he had actually signed and same.

The Employer hereby irrevocably designates as its representatives on the Board of Trustees, such trustees as are now serving, or will in the future serve, as Employer Trustees together with their successors. The Employer further agrees to be bound by all actions taken by the trustees pursuant to said Agreement and Declaration of Trust.

All contributions shall be made at such time and in such manner as the trustees require; and the trustees shall have the authority to have an accountant audit the payroll and wage records of the Employer for the purpose of determining the accuracy of contributions to the Michigan BAC Health Fund.

The payments required above shall be made to Michigan BAC Fringe Benefit Funds, P.O. Box 10180, Lansing, Michigan 48901-1080, except those required to be made to the International Pension Fund, International Health Care Fund, which shall be made as follows.

The payments required to be made to the International Pension Fund shall be made directly to the International Pension Fund, Dept 237, Washington, D.C. 20055-0237, which was established under an Agreement and Declaration of Trust, dated July 1, 1972.

The payments required to be made to the International Health Fund shall be made directly to the International Health Fund, Dept. 237, Washington, D.C. 20055-0237, which was established under an Agreement and Declaration of Trust dated August 21, 1990.

The deposit will be accompanied by such reports as may be designated by the Trustees of the Funds in accordance with the terms of Agreements of Trust, which are incorporated herein by reference. The deposits will be sent monthly to the depositories designated by the Trustees.

(a)     Whenever contributions are not received in the Fund Office by the fifteenth (15th) day of the second month following the month during which hours were worked requiring such contributions, the Employer shall pay five percent (5%) of the delinquent amount as liquidated damage.

7

MIG862-4

(b)   Whenever contributions are not received in the Fund Office by the first (1st) day of the second month following the month during which hours were worked required such contributions, the Employer shall pay ten percent (10%) of the delinquent amount as liquidated damage.

(c)   Non-payment by an Employer of any contributions when due shall not relieve any other Employer of its obligation to make payments as provided in the Collective Bargaining Agreement.

(d)   The Trustees may compel and enforce the payment of the contribution in any manner which they may deem proper and the Trustees may make such additional rules and regulations to facilitate and enforce the collection and payment thereof as they may deem appropriate.

(e)   Each Employer shall also render to the Trustees, with payment of its contributions or at such other regular intervals as the Trustees may request, written reports indicated the Employees' name, social security numbers, hours worked, rates of pay, wage earnings and the amount of payment to the Fund, as the Trustees may require.

(f)   The Trustees or their authorized representatives, may audit said pertinent payroll books and records of each Employer whenever such examination may be deemed necessary and advisable by the Trustees in connection with the proper administration of the Fund.

SECTION 3.  FRINGE BENEFIT SECURITY.  Any employer who does not have an established satisfactory record of payments into the Fringe Benefits Funds and any Employer who become delinquent in the monthly record of Pension, Health and Welfare, and/or Apprenticeship payments as determined by the Fund Administrator, shall be required to post a certified check payable to the Trustees to guarantee payment of said Fringe Benefit Funds that are due in accordance with the terms of this Agreement.

The certified check shall be deposited with the Fund Administrator until:

1.   Completion of twelve (12) successive months of operation without delinquency; however, the requirement may be reinstated upon any subsequent delinquency.

2.   Termination of this Agreement.

3.   Completion of such Employer's project, upon the written clearance from the Fund Administrator's office that such Employer has satisfactorily made the necessary contribution payments as required by this Agreement.

When an Employer is required to make a Security Deposit, the amount shall be as follows:

On projects requiring one to three Employees ................................ $  500
On projects requiring four or more Employees ............................... $1,000

Upon receipt from the Fund Administrator's Office of the monthly eligibility reports that such Employer is delinquent in contributions Administrator shall deduct the delinquency and appropriate penalties from the security to apply on said delinquencies.

If after payment of said delinquency, there is a balance remaining, said cash balance shall be left on deposit with the Administrator and the Employer shall be required to give an additional certified check or

8

MI9862-A

will furnish proof of his compliance with the provisions of this Article.

SECTION 4. <u>APPRENTICE WAGE</u>. Apprentices shall be paid on the following basis:

| | |
|---|---|
| 1st six (6) months | 65% of the Journeymen wage |
| 2nd six (6) months | 70% of the Journeymen wage |
| 3rd six (6) months | 75% of the Journeymen wage |
| 4th six (6) months | 80% of the Journeymen wage |
| 5th six (6) months | 85% of the Journeymen wage |
| 6th six (6) months | 90% of the Journeymen wage |

SECTION 5. <u>PAY DAY</u>. Each Employee shall be paid weekly during hours by means of a payroll check or cash, which shall be accompanied by a stub or memorandum indicating the dates of the pay period, total hours worked, gross amount of the check, the F.I.C.A. tax, income tax and other authorized deductions withheld and the net amount of the check. Not more than four (4) days pay shall be held back.

SECTION 6. <u>WAITING TIME</u>. Any Employee not receiving his wage on a regular pay day shall receive waiting time not to exceed 16 hours.

## ARTICLE IX
## UNION REPRESENTATION AND DUES

The Employer appoints TIC International Corporation as its agent for the receipt of union representation deduction authorization. Receipt of a written authorization by the Administrator shall constitute receipt by each Employer.

The Employer shall deduct from the wages of each Employee who has signed a check-off authorization conforming to federal law, and transmit monthly to the Union (or to any agency designated by said Union for the collection of such money), the sum for each hour paid which the Union specified, or specifies from time to time and so advises the Employer in writing, as the portion of each employee's Union dues to said Union, to its International Union, or to any other affiliate of the International Union, subject to check-off. The sums transmitted shall be accompanied by a statement, in a form specified by the Union, reporting the name of each person whose dues are being paid and the number of hours each employee has been paid.

## ARTICLE X
## TRAVEL AND PARKING

SECTION 1. <u>TRAVEL AND PARKING</u>. When an Employee is required to travel, the Employee shall be paid in accordance with the following schedule which shall be determined from the City Hall of the City of Lansing.

| | |
|---|---|
| 0-25 miles  none | 56-64 miles - $12.00 per day |
| 26-35 miles - $8.00 per day | 66 or more miles - $18.00 per day |
| 36-45 miles - $9.00 per day | day plus 18 cents per mile based on |
| 46-55 miles - $10.00 per day | one (1) round trip per vehicle per week. |

If an Employee is requested to haul material to a job site, he will receive:

9

MI9862-A

1 - 25 miles - $5.00
25 or more miles - $5.00 plus 15 cents per mile plus the above expense per day.

SECTION 2. <u>PARKING</u>. When free parking is not available, the Employer shall pay all costs of parking. The Employer shall have the right to require a form of car-pooling.

## ARTICLE XI
## COMPENSATION INSURANCE

Each Employer shall provide protection as required under the provisions of the Workers' Compensation Law of the State of Michigan. He shall also make contributions for his Employees under the Michigan Employment Security Act, regardless of the number of men employed by him. The Employer agrees to furnish all registration numbers when requested to do so by the Union.

## ARTICLE XII
## FOREMAN

SECTION 1. The foreman shall be selected by, and be a representative of, the Employer and shall be a practical mechanic of the trades. He shall not be required, as a condition of employment, to violate any part of this Agreement. The foreman, who shall be a working foreman, may be kept on the job before or after working hours by the Employer, but shall not do work covered by this Agreement during these hours, and shall not work more than one shift during any twenty-four (24) hours.

SECTION 2. When four (4) or more tile workers are employed on a job, one (1) shall be selected by the Employer to act as Foreman, and shall be paid one dollar ($1.00) per hour above Journeyman's rate.

## ARTICLE XIII
## WORKING CONDITIONS

SECTION 1. Employees covered by this Agreement shall not work by the piece nor by the foot, nor shall they bargain to do any certain piece of work in a certain time or for any certain amount of money. They shall not lump work of any character covered by this Agreement, nor work for any Employer who lumps work taken from another Employer.

SECTION 2. Slow-downs', forcing of overtime, spread-work tactics, stand-by crews featherbedding practices has been and are condemned.

SECTION 3. There shall be no limit on production of workman or restrictions on the full use of proper tools or equipment, and there shall be no task or piecework.

SECTION 4. Employers shall furnish suitable drinking facilities, toilet facilities, and properly heated and lighted place to eat lunch, and provide a safe place for Employees' tools and clothing.

SECTION 5. No Employee shall be required to do work which will destroy the true principles of the trades, such as skimping on materials or doing work in a manner not in keeping with the best traditions of the mechanic.

10

MI 9862-A

Craftworkers using the welding torch shall perform any of the work of the trades and shall work under the supervision of the craft foreman.

SECTION 7. Employees laid off because of job conditions shall be given the opportunity to resume work when the job is ready to proceed.

SECTION 8.  MARBLE, MOSAIC AND TERRAZZO WORK.  Marble, Mosaic, Venetian enamel and terrazzo. Cutting and assembling of mosaics. The casting of all terrazzo in shops and jobs.

SECTION 9.  Any employed Union member shall not perform work related services for any non-signatory flooring contractor and/or individual. Any Employee violating this clause shall be subject to the full discipline action of the Union.

All scratch coat on walls and ceiling where mosaic and terrazzo is to be applied shall be done by plasterers, with an allowance of not less than one-half inch (1/2") bed to be conceded to mosaic and terrazzo workers, all bedding above concrete floors or walls, the preparation, cutting, laying, or setting of metal, composition or wooden strips, lath, or other reinforcements, where used in mosaic and terrazzo work, shall be the work of the mosaic and terrazzo workers.

All cement terrazzo, magnesite terrazzo, De-O-Tex, rustic or rough washed for interior or exterior of buildings, and any other kind of plastic mixtures composed of chips of marble, granite, blue stone, enamel, mother-of-pearl and all other kinds of chips when mixed with cement, rubber, magnesium, chloride or other binding material, when used on floors, ceilings, stairs, saddles or any other part of the interior or exterior of buildings and also other work not considered a part of the building, such as fountains, swimming pools, etc. Also, all other substitutes that may be applied under the same method as mosaic or terrazzo.

Cutting and assembling of art ceramic and glass mosaic comes under the jurisdiction of the mosaic workers, and the setting of same shall be done by tile layers.

The finishing of cement floors where additional aggregate of stone is added by spreading or sprinkling on top of the finished base and troweled or rolled into the finish and then the surface ground by grinding machines, shall come under the jurisdiction of the terrazzo work. When no additional stone aggregate is added to the finished mixture, even though the surface may be ground, the work shall come under the jurisdiction of the cement finishers.

SECTION 9.  TILE LAYERS' WORK.  The cutting, laying or setting of all tile where used for floors, walls, ceilings, walks, promenades, roofs, stair treads, stair risers, facings, hearths, fireplaces, and decorative inserts together with any tile work; also preparing and setting all concrete, cement brickwork, or other foundation or materials that may be required to properly set and complete such work; the setting or bedding of all tiling, stone, marble, composition, glass, mosaic, or other materials forming the facing, hearths, or fireplace of a mantels, or the mantel complete, together with the setting of all cement, brickwork, or other material required in connection with the above work; also the slabbing and fabrication of tile mantels, counters and tile panels of every description and the erection and installation of same. The building, shaping, forming, construction of repairing of all fireplace work, whether in connection with a mantel hearth facing or not, and the setting and preparing of all material, such as cement, plaster, mortar, brickwork, ironwork, or other materials necessary for the proper and safe construction and completion of such work except that a mantel made exclusively of brick, marble, or stone, shall be conceded to be

11

MI9862-A

bricklayers, marble setters, or
"tile" refers to all burned clay products, as used in the tile industry, either glazed or unglazed, also to mixtures in tile form or cement, plastics, and metals that are made for and intended for use as a finished floor surface, whether upon interior or exterior floors, stair treads, promenade roofs, garden walks, interior walls, ceilings, swimming pools, and all places where tile may be used to form a finished surface for practical use, and all places where tile may be used to form a finished surface for practical use, sanitary finish or decorative purposes, for setting all accessories in connection therewith, or for decorative inserts in other materials.

SECTION 10. <u>MARBLE ASSISTANTS/HELPERS WORK.</u> Shall include, but not be limited to, all utility work such as loading and unloading trucks and shop machines, operating cranes and derricks, performing all rigging, the handling of all materials and such work that has historically and traditionally been the work of the Marble Assistants.

SECTION 11. <u>TERRAZZO ASSISTANTS/HELPERS WORK.</u> The work performed by Terrazzo Assistants shall included, but not be limited to, all handling of sand, cement, lime, terrazzo and all other materials that may be used in the installation of terrazzo and all similar materials, the distribution by hand or by use of any power driven equipment of the above materials. Rubbing, grinding and cleaning, polishing, and sealing marble mosaic and terrazzo floors, and wainscoting, curbs, steps and base, including but not limited to, magnesite terrazzo, dex-o-tex terrazzo, epoxy matrix terrazzo, aggregate, rustic or tough washed for exterior or interior of buildings placed either by machine or by hand and any other kind of mixtures of plastics composed of chips or granules or marble, granite, blue stone enamel, mother of pearl quartz, ceramic colored quartz and rubber, neoprene, vinyl, magnesium chloride or any other resinous or chemical substances used for seamless flooring systems, or any substances therefore when run on the building by hand or machine, any new method of installation such as caulking and sealing with all new terrazzo material, also acid etching of new or old surfaces, also all priming for installation of new materials in the installation of the above materials.

SECTION 12. <u>TILE ASSISTANTS/HELPERS WORK.</u> Shall include, but not be limited to, all cleaning, grouting and polishing of all tile, handling all tile, handing all sand, cement, lime, tile and all other similar materials that may be used in the installation, repair and maintenance of tile and/or similar materials. Assistants shall fill all joints and voids regardless of method on all tile work, particularly and especially after installation of said tile work. Tile Assistants shall also apply any and all protective coverings which will include, but not be limited to, all soap compounds, all types of paper products, all types of varnishes and lacquers, all types of tapes and all polyethylene coverings. Including all new types of products that may be used for the protection of tile installation.

**ARTICLE XIV**
**DISCHARGE OR LAYOFF**

Any Employee discharged or laid off during the regular working hours, Monday through Friday, shall receive full pay at regular established rates until receipt of check. If such Employee is laid off or discharged while working on premium time hours, his check is to be made available by 9:00 a.m. the following regular work day. When an Employee is discharged or laid off, he shall be given a severance slip as required by the M.E.S.C. or such other severance slip which meets the requirement of the law.

12

MI9862-A

## ARTICLE XV
## STEWARDS

There may be a steward on each job. It shall be the sole responsibility of the Union for his selection. Stewards shall be required to perform the work of their crafts.

## ARTICLE XVI
## SAFETY

All Employers must provide Employees on their jobs with protection from injury. Such protection shall include suitable scaffolds, lights, dust conditioners, safety glasses or other devices as are necessary. All Employees shall be required to use any such safety devices furnished by the Employer and shall comply with the Employer's safety rules.

Each Employee shall, as a condition of the employment, furnish and wear proper shoes. They shall also furnish and wear a safety helmet when any work is being performed overhead.

## ARTICLE XVII
## TILE APPRENTICESHIP

In order to maintain a sufficient number of skilled mechanics in these trades, the necessity for the employment of Apprentices is hereby recognized, and the employment and proper training of as many Apprentices as is reasonable and practical shall be encouraged by all parties to this agreement. To this end, the Employer shall be permitted to employ as many Apprentices as the Joint Apprenticeship Committee decides.

It is mutually agreed that the signatory parties hereto shall abide by all the rules set down by the Joint Apprenticeship Committee and the same shall be considered as part of this Agreement.

## ARTICLE XVIII
## GRIEVANCE PROCEDURE

SECTION 1. In the event a dispute occurs due to a misunderstanding, misinterpretation and/or violation of this Agreement, or any section thereof, the matter shall be referred to a Joint Grievance Committee for settlement, and its decision shall be final.

SECTION 2. The Joint Grievance Committee shall be composed of four (4) members: two (2) from the Employers and two (2) from the Union. Following appointment said Grievance Committee shall meet, elect a Chairman and a Secretary, adopt rules of procedure which shall bind the parties concerned, and proceed to consider any matters properly before it. The Joint Grievance Committee shall have the power only to adjust disputes which may arise due to a misunderstanding, misinterpretation and/or violation of the Agreement, or any section thereof. No Committee member shall be directly involved in the dispute to be resolved by said Committee.

SECTION 3. All complaints based on a misunderstanding, misinterpretation, and/or violation of this Agreement, or any section thereof, except wages and fringe benefits, shall be referred to the Joint Grievance Committee in writing. Said Committee shall meet within (2) working days of receipt of said complaint to consider same. If the Committee, within three (3) working days of such a meeting, is unable to decide a matter before it, the members of the Committee shall choose a fifth (5th) member. The

13

MII 9862 - A

If the Committee cannot agree on an impartial arbitrator, the impartial arbitrator shall be selected from a panel of arbitrators submitted by and in accordance with the rules and regulations of the Federal Mediation and Conciliation Service. The decision of the impartial arbitrator shall be final and binding upon all parties. The decision of said Committee shall be determined by a majority of its members and shall be rendered within seven (7) days after submission. Any expense involved in the operation of the Committee shall be borne equally by the parties involved in the dispute.

SECTION 4. No proceedings hereunder, based on any dispute, complaint or grievance herein provided for, shall be recognized unless called to the attention of the Employer and the Union in writing within seven (7) days.

## ARTICLE XIX
## BUSINESS REPRESENTATIVE

Employers shall do everything possible to assist in procuring the proper credentials for the Business Representative, upon request, for admission to their jobs.

## ARTICLE XX
## JURISDICTIONAL DISPUTES

Jurisdictional disputes shall be settled in accordance with the procedures established by the Building Trades Department of the AFL-CIO, or in special cases as agreed and established by two or more International Unions, without interruption of work or delay to the jobs.

## ARTICLE XXI
## SEPARABILITY AND SAVINGS PROVISION

It is the intent of the parties hereto abide by all applicable Federal and State statues and rules and regulations made pursuant thereto. If any provision of this Agreement is held invalid by any court or governmental agency having jurisdiction, or if compliance with or enforcement of any provision of this Agreement is restrained by such tribunal pending a final determination as to its validity, then such provision or provisions shall continue in effect only to the extent permitted and all other provisions of this Agreement shall remain in force and effect.

In the event that any provision of this Agreement is held invalid, or enforcement of or compliance with any provision is restrained, the Union and the Employer shall enter into immediate collective bargaining negotiations for the purpose of arriving at a mutually satisfactory replacement, incorporating the substance of such provision to the extent allowable under the law, to be in effect during the period of invalidity or restraint.

## ARTICLE XXII
## JOB TARGET CLAUSE

Upon request of a signatory Employer, the Local Union in whose jurisdiction the job is located, may give approval for variations in the wages, hours, and conditions contained in this Agreement for that particular job. All Employers signatory to this Agreement are entitled to use the approved variations on that particular job based on their individual request for said variations. All work performed by signatory Employers or their subcontractors under this clause will be performed in accordance with Article V provisions of this Agreement. Upon request of a signatory Employer, the Local Union shall waive the

14

MI9862-A

application of Article VIII-A and of Article VIII-B and define the target rate established by the Contractors and the Union for that particular job site. A minimal of seven working days notice previous to bid date of proposed target job to allow the Union significant time for notification of other signatory contractors.

## ARTICLE XXIII
## TERMINATION

This Agreement shall continue in effect through April 30, 2000. Should either party desire to amend or terminate this Agreement at the above expiration date, such party shall give the other written notice of such desire at least sixty (60) days but not more than (90) days prior to the expiration date. If neither party gives such notice to amend or terminate, the Agreement shall remain in full force from year to year thereafter.

In witness whereof, the parties hereto executed this Agreement on the day and year first written above.

15

MI9862-A

## SIGNATURE PAGE

### TILE, TERRAZZO AND MOSAIC WORK
### AND FINISHER/ASSISTANT WORKERS

The undersigned company, by its authorized agent who has executed this Agreement, hereby affirm that it has read the Collective Bargaining Agreement attached hereto, and that it is familiar with its terms, and the undersigned company hereby adopts and accepts and attached Agreement in its entirety as the basis upon which it will employ members of the Local 9 Michigan, Lansing Chapter.

The undersigned company expressly agrees to comply with all the working conditions set forth in the attached Collective Bargaining Agreement and, also, expressly agrees to be bound by the terms of the Trust Agreements and/or the Fund Agreements under which the Pension Fund, Apprenticeship fund, Union Dues Check-off Fund, Union Dues, Michigan BAC Health Fund, International Health and Welfare Fund, and Industry Promotion Fund exist and operate.

This Agreement constitutes the entire Agreement between the parties and any local or area practices or working rules which may be in conflict with the provisions contained in this Agreement.

6-21-3: 98:22    FROM-BRICKLAYERS    ...IED CRAFTWOR...

...his ........... day of ....

THE CONTRACTOR

ARCHITECTURAL SOUTHWEST STONE CO LLC
295205 0031 MI 2

Name and Title                    Name and Title
                                  BAC Local 9
...chitectural Southwest           3321 Remy Drive
Name of Company                   Lansing, MI 48906
                                  (517) 886-9781
2.599 Schoolcraft
...ddress                          Architectural Southwest Stone
                                            Company LLC
..... mi 48150
..y. State, Zip Code               31
                                   CVGP
... 422 1965 / 734-422-3381         23
...ephone No.        Fax No.

F# 383454448

...chanics & Helper.
...r/Grand rapids/M...kegoo Chapters

16

EXHIBIT B

Case 1:07-cv-01369-RWR     Document 7-5     Filed 12/05/2007     Page 28 of 56



B.A.C. LOCAL NO. 32
TILE, MARBLE and TERRAZZO
COLLECTIVE BARGAINING AGREEMENT
June 1, 1998 - May 31, 2003

INDEX

ARTICLE I
JURISDICTION

| | | |
|---|---|---|
| 1.1. | Geographic Jurisdiction | 1 |
| 1.2. | Tile Layers' Craft Jurisdiction | 1 |
| 1.3. | Tile Finishers' Craft Jurisdiction | 2 |
| 1.4. | Marble Masons' Craft Jurisdiction | 3 |
| 1.5. | Marble Finishers' Craft Jurisdiction | 3 |
| 1.6 | Terrazzo Workers' Craft Jurisdiction | 4 |
| 1.7. | Terrazzo Finishers' Craft Jurisdiction | 4 |

ARTICLE II
UNION SECURITY

| | | |
|---|---|---|
| 2.1. | Exclusive Representation | 5 |
| 2.2. | Union Security | 5 |

ARTICLE III
WORKING CONDITIONS

| | | |
|---|---|---|
| 3.1. | Equal Employment Opportunity | 6 |
| 3.2. | MESC | 6 |
| 3.3. | Workmens' Compensation | 6 |
| 3.4. | Hiring | 6 |
| 3.5. | Safety | 6 |
| 3.6. | Production | 7 |
| 3.7. | Layoff | 7 |
| 3.8. | Work Quality | 7 |
| 3.9. | Subcontracting | 7 |
| 3.10. | Piece Work | 7 |
| 3.11. | Foremen | 7 |
| 3.12. | Ratio | 8 |
| 3.13. | Special Shift | 8 |
| 3.14. | Scaffold Work/Swing Stage | 8 |
| 3.15. | Travel and Parking Expense | 8 |
| 3.16. | Tools | 9 |
| 3.17. | Referral | 9 |
| 3.18 | Workday | 9 |
| 3.19 | Apprentices | 9 |

ARTICLE IV
WAGES AND FRINGE BENEFITS

4.1.    Payment of Wages ................................................. 9
4.2.    Wage and Fringe Benefit Rates................................. 10
4.3.    Advancement ...................................................... 35
4.4.    Overtime, Holiday Pay and Work Hours..................... 36
4.5.    Maintenance Work................................................ 37
4.6.    Fringe Benefits.................................................... 37
4.7.    Delinquency....................................................... 42
4.8.    Audit................................................................ 43
4.9.    Contributions..................................................... 43

ARTICLE V
WORK OUTSIDE OF UNION JURISDICTION

5.1.    Other Agreements................................................ 43
5.2.    Portability ......................................................... 43

ARTICLE VI
LEGALITY OF AGREEMENT....................................... 44

ARTICLE VII
INDUSTRY STANDARDS

7.1.    Industry Standards.............................................. 44

ARTICLE VIII
GRIEVANCE AND ARBITRATION

8.1.    Grievance and Arbitration..................................... 44

ARTICLE IX
IMPERFECT WORK

9.1.    Imperfect Work................................................... 45

ARTICLE X
RIGHTS OF PARTIES

10.1.    Rights of Parties................................................ 45
10.2.    Preservation of Work........................................... 46

ARTICLE XI
EMPLOYMENT

11.1.    Employment...................................................... 46

ARTICLE XII
TERMINATION......................................................... 47

# B.A.C. LOCAL NO. 32
## TILE, MARBLE and TERRAZZO
## COLLECTIVE BARGAINING AGREEMENT
### June 1, 1998 - May 31, 2003

This Agreement entered into between B.A.C. Local No. 32 of Michigan, an affiliate of the Union of Bricklayers and Allied Craftworkers, AFL-CIO, (hereinafter the Union) and the Detroit Tile Contractors Association (hereinafter Tile Association), the Association, of Marble Contractors and Finishers, Inc., (hereinafter the Marble Association), and the Detroit Terrazzo Association (hereinafter Terrazzo Association), (collectively the Associations).

## ARTICLE I
## JURISDICTION

1.1. <u>Geographic Jurisdiction.</u> This Agreement covers the counties of Monroe, Wayne, Macomb, Oakland, St. Clair, Sanilac, Washtenaw, Lenawee and Livingston in the State of Michigan.

1.2. <u>Tile Layers' Craft Jurisdiction.</u>

A.    The laying, cutting or setting of all tile where used for floors, walls, ceilings, walks, promenade roofs, stair treads, stair risers, facings, hearths, fireplaces, and decorative inserts, together with any marble plinths thresholds or window stools used in connection with any tile work; also to prepare and set all concrete, cement, brickwork or other foundation or materials that may be required to properly set and complete such work; the setting or bedding all tiling, stone, marble, composition, glass mosaic, or other materials forming the setting of all cement, brickwork, or other material required in connection with the above work; also the slabbing and fabrication of tile mantels, counters and tile panels of every description and the erection and installation of same. The building, shaping, forming construction or repairing of all fireplace work, whether in connection with a mantel hearth facing or not, and the setting and preparing of all material such as cement, plaster, mortar, brickwork, iron work or other materials necessary for the proper and safe construction, and completion of such work, except, that a mantel made exclusively of brick, marble or stone, shall be conceded to be bricklayers, marble setters' or stonemasons' work respectively.

B.    It will be understood that the word "Tile" refers to all burned clay products, as used in the tile industry, either glazed or unglazed, and to all composition materials made in single units and mixtures in tile form of cement, plastics, and metals that are made for and intended for use as a finished floor surface, whether upon interior or exterior floors, stair treads, promenade roofs, garden walks, interior walls, ceilings, swimming pools, and all places where tile may be used to form a finished surface for practical use, sanitary finish or

1

decorative purposes, for setting all accessories in connection therewith, or for decorative inserts in other materials.

C. All terra cotta style unit tile regardless of method of installation and split brick, quarry tile or similar material where the bed is flooded or screeded and the joints grouted. Where the work is installed by Tile Layers, the bedding, jointing, and pointing of the above materials shall be the work of the craft installing the same.

D. All clay products known as terra cotta tile, unit tile, ceramic veneer and machine made terra cotta, regardless of the method of installation. Where the preponderance of materials to be installed comes within the provisions of this section and when there is also some material in excess of the sizes provided for in this section, the tile layer shall install all such materials.

E. All work described above, as it may be supplemented or modified by the Constitution and By-laws of the Union, will be performed only by the Tile Layers, Apprentices and Improvers working under this Agreement.

1.3. Tile Finishers' Craft Jurisdiction

A. The Finishers shall do all cleaning of tile and all grouting of tile, and shall handle all materials such as sand, cement, lime, tile, all types of tile panels, prefabricated tile units including the unpacking of same and any other form of tile or material that may be used by the Tile Layer, after being delivered on the job site.

B. Cleaning of tile shall be part of the tile contract of the Employer and shall be the exclusive work of Tile Finishers hereunder. Cleaning of tile shall include all washing of every kind and removal of all scum and residue of every nature. All packages will be unloaded by said Tile Finishers regardless of number.

C. The Tile Finisher shall do all the grouting of tile work installed by the Tile Layers. All materials must be placed within a reasonable distance from the place it is to be installed regardless of what floor. All power equipment such as power buggies, mortar mixers, fork lifts, etc., required to be used at the job site by the Tile Finishers in conjunction with tile laying operations shall be operated by same.

D. The Employer on all jobs shall furnish to the Tile Finisher pails, sponges, rags, and mixing boxes, also wheelbarrows where necessary, hoes, shovels, and all other materials that a Tile Finisher needs on the job. All the above mentioned equipment will be cleaned daily.

2

1.4. Marble Masons' Craft Jurisdiction

A. The carving, cutting and setting of all marble, slate, including slate blackboards, stone, albereen, carrara, sanonyz, marbelithic, and all artificial, imitation or cast marble of whatever thickness or dimension. This shall apply to all interior work, such as sanitary, decorative and other purposes inside of buildings of every description wherever required, including all polish, hones or sand finish, also the cutting and fitting of above accessories in connection with such work, and the laying of all marble tile, slate tile and terrazzo tile. Furthermore, the installation of stone products 12" x 12" x 1/2" or greater in size and thickness shall be the work jurisdiction of the Marble Masons and Marble Finishers in accordance with past practice.

B. All work described above, as it may be supplemented or modified by the Constitution and By-laws of the Union, will be performed only by Journeymen, Apprentices and Improvers working under this Agreement.

1.5. Marble Finishers' Craft Jurisdiction

A. The Employer shall have the right to determine the competency and qualifications of Employees referred by the Union and the right to hire accordingly.

B. Marble Finishers should accompany Marble Masons on jobs where it is clearly in the interest of economy and at the discretion of the Employer.

C. The Marble Finisher is to properly perform all duties that usage has established in various locations as being the work of the Marble Finisher and to carry out all orders as may be issued by the Marble Mason under whose supervision he is to be working.

D. Marble Finishers shall clean, fill grout, grind, sand, and polish as well as handle plaster, sand, cement and marble. Marble Finishers shall load and unload trucks of all materials that shall be used by the Marble Mason after being delivered on the job site. The Marble Finisher shall also work with the Marble Mason, marble truck driver or marble shopmen to execute the above tasks then in interest of economy and good judgment.

E. All power equipment such as power buggies, mortar mixers, forklifts, trucks, cranes, etc., required to be used at the job site by the Marble Finisher, in conjunction with marble laying operations, shall be operated by the Marble Finisher.

F. Each Marble Finisher is to equip himself with the following minimum tools: putty knife, 6" or better measuring rule, pencil, pointing trowel, and is to wear shoes suitable to conditions of construction work at all times. These tools are to be furnished by the Marble Finisher, for his use, despite the inclusion of these identical tools in the Marble Mason's toolbox.

3

1.6. Terrazzo Workers' Craft Jurisdiction

A. Terrazzo Workers' craft jurisdiction shall include the installation of terrazzo, casting and rolling of terrazzo in shops and on jobs and other related work as defined by the Constitution and By-laws of the Union.

B. The Terrazzo Finishers shall wheel or carry into the building all materials necessary in the construction of terrazzo floors or similar heavy duty floors and they shall do all mixing of aggregates used in the installation of terrazzo or similar floor. Terrazzo Finishers shall do all placing of wire mesh reinforcing and isolation membranes necessary for the construction of terrazzo or similar floors such as, Dex-o-tex, Latex, Magnesite, Monolithic, Epoxy, Neoprtex, Matrix, Polyester, and all new types of terrazzo floors as a result of research and development, new materials and processing being introduced in the terrazzo industry that use marble chips. Decorative rustic terrazzo is to be included as terrazzo work. Terrazzo Finishers shall do all grinding and polishing whether done by hand or machine on new terrazzo and similar floors as specified above. All wax treatment, whether done by hand or machine, must be done by Terrazzo Finishers.

C. The Employer, on all jobs, shall furnish to the Terrazzo Finisher: pails, sponges, rags and mixing boxes, also wheelbarrows where necessary, hoes, shovels and all other materials that a Terrazzo Finisher needs on the job. All the above-mentioned equipment will be cleaned daily, by Terrazzo Finisher.

D. The Employer shall furnish the Employee with the necessary special clothing items and proper ventilation in working with epoxies.

E. All electric extension chords connecting machines shall have plugs on each end consisting of one male plug on one and a female plug on the other, and shall not be spliced more than once and shall be maintained with rubber friction tape of insulating type to avoid any shorting of electric power. All 220 volt machines shall be grounded and meet all OSHA and MIOSHA safety specifications.

1.7. Terrazzo Finishers' Craft Jurisdiction

A. Terrazzo Finishers shall do all handling of sand, cement, marble chips dividing strips and all other materials required to perform the terrazzo work, after being delivered on the job site.

4

F. All power equipment such as power buggies, mortar mixers, forklifts, trucks, cranes, etc., required to be used at the job site by the Terrazzo Finisher, in conjunction with the installation of Terrazzo, shall be operated by the Terrazzo Finisher.

All machines should have a connecting plug attached to a fuse box so the cord can be attached safely.

All equipment shall be cleaned and greased as directed by employer. All floor machines shall have grips of wood, rubber or other non-conducting material.

No worker shall work in a building alone unless all electrical cables are suspended above the floor.

ARTICLE II
UNION SECURITY

2.1. Exclusive Representative. The Employer recognizes the Union and the International Union of Bricklayers and Allied Craftworkers, AFL-CIO, hereafter collectively called the Union as the sole and exclusive collective bargaining representative of all persons employed by it performing work claimed in the Union's craft jurisdiction, as defined in Article I of this Agreement and on all present and future jobsites based upon the fact, acknowledged by the Employer to be true, that the Union has represented and continues to represent a majority of those Employees within the meaning of Section 9(a) of the National Labor Relations Act. The Employer further agrees that any dispute concerning its obligation to recognize the Union as sole and exclusive bargaining representative will be resolved solely under Article VII Grievances. The Employer expressly waives any right to abrogate or repudiate this Agreement during its effective term or to seek a National Labor Relations Board election during the term of this Agreement.

2.2. Union Security. All present Employees who are members of the Union at the effective date of this Agreement shall remain members of the Union in good standing as a condition of employment. A member in good standing is an individual who has met all obligations of Union membership, including the obligation to pay only such fees and dues which are necessary to support the Union's representational activities -- such as collective bargaining, grievance adjustment, and administration of this Agreement. All present Employees who are not members of the Union and all Employees who are hired hereafter shall become and remain members in good standing of the Union on and after the eighth day following the date of their hire or the effective date of this Agreement, whichever is later. The eight-day period within which an Employee shall join the Union shall be computed from the first day such Employee enters the employment of the Employer with whom the Union has an Agreement.

5

# ARTICLE III
## WORKING CONDITIONS

3.1. **Equal Employment Opportunity.** The Employer and the Union agree that there will be no discrimination in employment based on race, color, creed, national origin, gender or age and that nothing elsewhere in this Agreement shall be construed as requiring or permitting such discrimination. The Employer and the Union further agree that each will cooperate with the other in taking such actions by either or both as are proper and necessary to insure equality of opportunity in all aspects of employment.

3.2. **MESC.** In order to avoid any differential between Employers when obtaining labor, it is hereby agreed that the Employer party to this Agreement shall provide unemployment compensation insurance for all Employees. All Employers shall furnish the Union with the MESC number when requested.

3.3. **Workmens' Compensation.** All Employers shall maintain Workmens' Compensation Insurance and shall comply with the Michigan laws governing 'tile, marble and terrazzo contractors, as applicable. All Employers shall furnish the Union with a copy of their Workmens' Compensation Insurance Certificate when requested.

3.4. **Hiring.** In hiring and retention of Employees, preference to Employees regularly employed in the area, except that sub-contractor may bring in one Employee not regularly employed in the area.

3.5. **Safety.** Whenever a particular job may require the possible use of any special equipment which is necessary to maintain safe work standards required on the job, such as rubber boots, or other special clothing or equipment commonly reside on the Employee's trade. Each Employee shall be responsible for his own safety equipment that is issued to him by the Employer. All equipment shall be returned to the Employer by the Employee in good condition upon completion of his employment on said job. The Employer shall also furnish the Employee with all necessary clothing and proper ...ecting machines shall have plugs on each end consisting of one male plug on one end and a female plug on the other, and shall not be spliced tape to avoid any shorting of ...lectric power. All 220 volt machines shall be grounded and meet all OSHA and ...OSHA safety specifications. All machines should have a connecting plug attached ...a fuse box so that the cord can be attached safely. Operators of floor machines ...e entitled, during working hours, to clean their machines as directed by employer. All ...or machines shall be cleaned and greased during working hours, either before leaving ...e job or before a new job is commenced. All floor machines shall have grips of wood, ...bber or other non-conducting material. No man shall work in a building alone unless ...e electrical cables are suspended above the floor.

6

3.6. **Production.** There shall be no limitations by the Union on the amount of work an Employee shall perform during a working day; neither shall the Employer be permitted to specify or insist upon a certain amount of work to be performed.

3.7. **Layoff.** Employees to be laid off whenever possible shall receive twenty-four (24) hours notice before layoff.

3.8. **Work Quality.** The Union agrees that any Employees with properly supplied materials failing to produce a standard grade of workmanship through negligence, carelessness or lack of sobriety shall not be entitled to compensation for same.

3.9. **Subcontracting.** The Employer agrees not to subcontract work to be done at the site of the construction, alteration or repair of a building, structure, or other work, which would come under the terms of this Agreement, to any Employer or other Employee not having an Agreement with the Union. In the event the Employer elects to subcontract any work covered by this Agreement, the Employer shall:

A. Provide in the subcontract for compliance by the sub-contractor with the terms and conditions of this Agreement.

B. Sub-contractor shall sign this Agreement and the sub-contractor shall be responsible for all wages and fringe benefit contributions due hereunder.

3.10. **Piece Work.** No Employee shall be allowed to contract or subcontract work which would come under the terms of this Agreement if done by the Employer, if the effect of such contracting or subcontracting is to subvert the wages and working conditions required hereunder or to work for any person contracting work by the square foot, or lump-sum work of any character.

3.11. **Foreman.** When the Employer employs more than the number of Employees from a particular craft on a job, as provided in the following schedule, a foreman shall be designated from that craft and paid the foreman premium as follows:

| CRAFT | RATIO | COMPENSATION |
|---|---|---|
| Tile Layer | 3 or more Tile Layers | $2.50 per hour premium |
| Tile Finisher | 6 or more Tile Finishers | $1.00 per hour premium |
| Marble Mason | 3 or more Marble Masons | $2.50 per hour premium |
| Marble Finisher | 6 or more Marble Finishers | $1.00 per hour premium |
| Terrazzo Worker | 3 or more Terrazzo Workers | $2.50 per hour premium |
| Terrazzo Finisher | 6 or more Terrazzo Finishers | $1.00 per hour premium |

7

3.12    Foreman:  On all work where as foreman is required, he is to be the agent of the Employer and shall be a practical Tile Layer/ Tile Finisher, Marble Mason/Marble Finisher or Terrazzo Worker/Terrazzo Finisher(Helper), Marble Mason/Marble Finisher(Helper), Terrazzo Worker/Terrazzo Finisher(Helper).

3.13    Ratio.  All signatory Employers will employ a minimum of one Tile Layer/Tile Finisher, Marble Mason/Marble Finisher or Terrazzo Worker/Terrazzo Finisher.  No Employer shall allow or permit, other than an appropriate journeyman or an indentured apprentice to do the work of the appropriate craft.

.14    Special Shift.  When conditions make it impractical to work a shift wholly during regular working hours and when only one shift per day is employed on the job by the Employer, a single eight-hour shift per day, known as a special shift - any time before 7:00 a.m. and after 5:00 p.m. - may be worked by the Employer. Pay for the special shift shall be $3.00 per hour above the applicable base rate. The Union will be notified of special shift to be performed. For safety purposes, not less than two Employees shall be allowed to work on second or third shift, depending on job conditions.

3.15    Scaffold Work/Swing Stage.  Pay for work on scaffolding over 15 feet, shall be $1.25 per hour above the applicable base rate for all hours worked.  Swing stage work shall be compensated $1.50 per hour above the applicable base rate for all hours worked.

| DISTANCE | REIMBURSEMENT AMOUNT |
| --- | --- |
| 25 miles to 35 miles | $4.00 per day |
| 35 miles to 45 miles | $5.50 per day |
| 45 miles to 55 miles | $6.50 per day |
| 55 miles to 65 miles | $7.50 per day |
| 65 miles to 75 miles | $8.50 per day |
| 75 miles to 85 miles | $9.50 per day |

3.15    Travel and Parking Expense.  Expenses to cover transit and transportation shall be reimbursed to each Employee per day outside of the 25-mile radius from the Detroit City Hall at the following zone rates, in accordance with the current published zone map.

Over 85 miles, $60.00 per day expense allowance will be paid, plus transit and transportation expenses, once to and from the job site at the rate of $.31 per mile for each mile in excess of the stated 45 mile radius.

Any toll bridge or toll charges incurred by an employee traveling to and from work will be paid by the Employer in the State of Michigan.

8

Parking:  A parking reimbursement will be paid to driver, according to receipt turned in. The Employer will be responsible to give the employee a written receipt.

3.16    Tools.  Employer shall supply Employee all cutting wheels, saws, saw blades, straight edges over eight feet, wheel barrows, mortarboxes, mortar hoes, shovels, epoxy grout floats, sponges, rags and any power tools as are necessary to perform work covered by this Agreement. All of the aforementioned equipment will be cleaned daily and are to be returned to employer in working condition. Employees must have their own normal day-to-day hand tools.

3.17    Referral.  The Union agrees to refer qualified workers, to the extent that they are available, upon notification to the Union.  The Union will not refer workers to any Employer not having a collective bargaining agreement with the Union.

3.18    Work Day. Employees shall work a full eight hours and receive eight hours pay for same; shall be all territories within the jurisdiction of this contract and any job site where a per diem and expenses are being paid.

If employee is asked to come to shop to pick up materials, the work day shall start at the time employee commences work (loading, etc.) at the shop. Any time worked over eight (8) hours including delivery of materials and supplies shall be paid at applicable overtime rate.

3.19    Apprentices:  In order to train sufficient skilled mechanics for the industry, the necessity for apprentices and/or improver apprentices is recognized and encouraged by the parties to this Agreement.  It is agreed that the Employer shall abide by the Tile, Marble and Terrazzo J.A.T.C. B.A.T. approved standards.

ARTICLE IV
WAGES AND FRINGE BENEFITS

4.1    Payment of Wages.  All wages paid by the Employer to its Employees shall be paid in currency or negotiable check with itemized statement showing Employee's name, hours worked and deductions, on each Friday, not later than 4:30 p.m. and shall include all time up to and including the Tuesday of Wednesday of previous week, by hand delivery, unless Employee and Employer agree by mutual consent to have wages sent by direct deposit. This agreement shall be in writing. In case of a holiday on Friday, payment shall be made on the preceding Thursday. Any Employee failing to receive his money on regular payday, at the time of discharge, shall receive additional waiting time pay not to exceed two days.

When any Employee leaves work of his own accord, the Employer shall not be obligated to pay him before the regular payday. Any Employee who is discharged or laid off by the Employer shall be paid in full at once. In case of any dispute of wages due Employees, the Employer shall pay under protest pending settlement of dispute by the Joint Board of Arbitration.  The paycheck will be deposited with the office of the Union.

9

4.2.   Wage and Fringe Benefit Rates.   The Employer agrees to timely pay the appropriate wages and make the required fringe benefit contributions for each Employee, for every hour worked, in accordance with such Employee's classification as herein provided.

A.   TILE SETTERS WAGES/FRINGES

| Effective Date: | June 1, 1998 | June 1, 1999 | June 1, 2000 |
|---|---|---|---|
| Base Rate | $20.78 | $21.37 | $22.21 |
| Vacation | 2.00 | 2.00 | 2.00 |
| Dues Check-off | 1.14 | 1.35 | 1.41 |
| Taxable | $23.92 | 24.72 | 25.62 |
| Health & Welfare | 3.30 | 3.30 | 3.50 |
| Pension | 3.30 | 3.40 | 3.50 |
| Int. Pension | 1.30 | 2.35 | 2.40 |
| IMI Pension | .30 | 1.30 | 1.30 |
| Promotion | .30 | .30 | .50 |
| IMI Training Fund | .15 | .15 | .15 |
| Local Training Fund | .15 | .40 | .15 |
| annuity/DC | .75 | .07 | .07 |
| TOTAL | $32.09 | $33.39 | $34.79 |

B.   TILE FINISHERS (HELPERS) WAGES/FRINGES

| Effective Date: | June 1, 1998 | June 1, 1999 | June 1, 2000 |
|---|---|---|---|
| Base Rate | $ 17.36 | $ 17.55 | $ 17.99 |
| Vacation & Holiday | 2.00 | 2.00 | 2.00 |
| Dues Check-off | 1.14 | 1.35 | 1.41 |
| Taxable | $ 20.50 | $ 20.90 | 21.40 |
| Health & Welfare | 3.30 | 3.40 | 3.50 |
| Pension | 2.30 | 2.35 | 2.40 |
| Int. Pension | 1.30 | 1.30 | 1.30 |
| SUB | .50 | .50 | .50 |
| IMI Pension | .30 | .40 | .50 |
| Promotion | .15 | .15 | .15 |
| Local Training Fund | .07 | .07 | .07 |
| annuity | .75 | 1.00 | 1.25 |
| TOTAL | $ 29.17 | $ 30.07 | $ 31.07 |

C.   TILE TRAINEE WAGES/FRINGES

Effective Dates June 1, 1998 through May 31, 2003, all Tile Trainee Finishers are to be paid as follows: The columns set forth below represent six-month periods during which an Employee will be expected to work approximately 850 hours.

Tile Trainee Rates Effective June 1, 1998

| TILE TRAINEE WAGES AND FRINGES | | | | JUNE 1 1998 | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | 2* | 3 | 4* | 5 | 6* | 7 | 8* | 9 | 10** |
| Base Rate | 7.82 | 8.92 | 10.08 | 11.18 | 11.79 | 12.40 | 12.50 | 13.10 | 13.45 | 14.45 |
| Vac. | 0.00 | 0.00 | 0.50 | 0.50 | 0.75 | 1.00 | 1.25 | 1.50 | 1.75 | 1.75 |
| Dues Ckoff | 1.14 | 1.14 | 1.14 | 1.14 | 1.14 | 1.14 | 1.14 | 1.14 | 1.14 | 1.14 |
| Taxable | 8.96 | 10.06 | 11.72 | 12.82 | 13.68 | 14.54 | 14.89 | 15.74 | 16.34 | 17.34 |
| H&W | 3.30 | 3.30 | 3.30 | 3.30 | 3.30 | 3.30 | 3.30 | 3.30 | 3.30 | 3.30 |
| Pension | 0.00 | 0.00 | 0.00 | 0.50 | 0.75 | 1.10 | 1.35 | 1.60 | 2.00 | 2.30 |
| Int Pension | 0.50 | 0.50 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 |
| Sub Fund | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 |
| IMI Training | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 |
| Promotion | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 |
| Local Training | 0.00 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 |
| ANNUITY/D.C. | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total | 13.28 | 14.38 | 17.84 | 18.94 | 20.05 | 21.26 | 22.36 | 23.46 | 24.46 | 25.46 |

| | | | | June 1, 1999 | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | 2* | 3 | 4* | 5 | 6* | 7 | 8* | 9 | 10** |
| Base Rate | 7.71 | 8.83 | 10.02 | 11.14 | 11.78 | 12.42 | 12.54 | 13.17 | 13.57 | 14.57 |
| Vac. | 0.00 | 0.00 | 0.50 | 0.50 | 0.75 | 1.00 | 1.25 | 1.50 | 1.75 | 1.75 |
| Dues Clkoff | 1.35 | 1.35 | 1.35 | 1.35 | 1.35 | 1.35 | 1.35 | 1.35 | 1.35 | 1.35 |
| Taxable | 9.06 | 10.18 | 11.87 | 12.99 | 13.88 | 14.77 | 15.14 | 16.02 | 16.67 | 17.67 |
| H&W | 3.40 | 3.40 | 3.40 | 3.40 | 3.40 | 3.40 | 3.40 | 3.40 | 3.40 | 3.40 |
| Pension | 0.00 | 0.00 | 0.00 | 0.55 | 0.80 | 1.15 | 1.40 | 1.65 | 2.00 | 2.00 |
| Int Pension | 0.55 | 0.55 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 |
| Sub Fund | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 |
| IMI Training | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 |
| Promotion | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 |
| Local Training | 0.00 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 |
| ANNUITY/D.C. | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.50 |
| Total | 13.58 | 14.70 | 18.24 | 19.36 | 20.50 | 21.74 | 22.86 | 23.99 | 24.99 | 25.99 |

## June 1, 2000

| | 1 | 2* | 3 | 4* | 5 | 6* | 7 | 8* | | 10** |
|---|---|---|---|---|---|---|---|---|---|---|
| Base Rate | 7.75 | 8.90 | 10.12 | 11.26 | 11.93 | 12.60 | 12.94 | 13.35 | 13.75 | 14.75 |
| Vac. | 0.00 | 0.00 | 0.50 | 0.50 | 0.75 | 1.00 | 1.00 | 1.50 | 1.50 | 1.75 |
| Dues Chkoff | 1.41 | 1.41 | 1.41 | 1.41 | 1.41 | 1.41 | 1.41 | 1.41 | 1.41 | 1.41 |
| Taxable | 9.16 | 10.31 | 12.03 | 13.17 | 14.09 | 15.01 | 15.35 | 16.26 | 16.91 | 17.91 |
| H&W | 3.50 | 3.50 | 3.50 | 3.50 | 3.50 | 3.50 | 3.50 | 3.50 | 3.50 | 3.50 |
| Pension | 0.00 | 0.60 | 0.60 | 0.60 | 0.85 | 1.20 | 1.40 | 1.65 | 2.00 | 3.50 |
| Int Pension | 0.00 | 0.00 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 2.00 | 2.00 |
| Sub Fund | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 |
| IMI Training | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 1.30 |
| Promotion | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.50 |
| Cal Training | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.15 |
| ANNUITY/D.C. | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 |
| Total | 13.88 | 15.03 | 18.65 | 19.79 | 20.96 | 22.23 | 23.52 | 24.68 | 25.68 | 26.68 |

* The Joint Apprenticeship & Training Committee will decide if the Employee should remain at that level or may be advanced to the next stage.

** Advancement to Tile Improver to be approved by the Joint Apprenticeship & Training Committee.

---

## D. APPRENTICE TILE SETTERS and TILE FINISHERS/ HELPERS WAGE RATES -- Indentured After March 1998

The Joint Apprenticeship and Training Committee shall advance all Apprentices

### APPRENTICE TILE SETTERS

Effective June 1st, 1998 - Each period is equal to 6 months

APPRENTICE TILE LAYER
INDENTURED AFTER MARCH 98
WAGES AND FRINGES

**JUNE 1 1998**

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|
| Base Rate | 8.92 | 11.18 | 12.40 | 13.10 | 14.45 | 17.86 | 18.36 | 19.11 |
| Vac. | 0.00 | 0.50 | 1.00 | 1.50 | 1.75 | 2.00 | 2.00 | 2.00 |
| Dues Chkoff | 1.14 | 1.14 | 1.14 | 1.14 | 1.14 | 1.14 | 1.14 | 1.14 |
| Taxable | 10.06 | 12.82 | 14.54 | 15.74 | 17.34 | 21.00 | 21.50 | 22.25 |
| H&W | 3.30 | 3.30 | 3.30 | 3.30 | 3.30 | 3.30 | 3.30 | 3.30 |
| Pension | 0.00 | 0.50 | 1.10 | 1.60 | 2.00 | 2.30 | 2.30 | 2.30 |
| Int Pension | 0.00 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 |
| IMI Training | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 |
| Promotion | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 |
| Local Training | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 |
| ANNUITY/D.C. | 0.00 | 0.00 | 0.00 | 0.50 | 0.50 | 0.75 | 0.75 | 0.75 |
| Total | 13.88 | 18.44 | 20.76 | 22.96 | 24.96 | 29.17 | 29.67 | 30.42 |

**JUNE 1 1999**

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|
| Base Rate | 8.83 | 11.14 | 12.42 | 13.17 | 14.57 | 17.86 | 18.55 | 19.30 |
| Vac. | 0.00 | 0.50 | 1.00 | 1.50 | 1.75 | 2.00 | 2.00 | 2.00 |
| Dues Chkoff | 1.35 | 1.35 | 1.35 | 1.35 | 1.35 | 1.35 | 1.35 | 1.35 |
| Taxable | 10.18 | 12.99 | 14.77 | 16.02 | 17.67 | 21.40 | 21.90 | 22.65 |
| H&W | 3.40 | 3.40 | 3.40 | 3.40 | 3.40 | 3.40 | 3.40 | 3.40 |
| Pension | 0.00 | 0.55 | 1.15 | 1.65 | 2.00 | 2.35 | 2.35 | 2.35 |
| Int Pension | 0.00 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 |
| IMI Training | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 |
| Promotion | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 |
| Local Training | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 |
| ANNUITY/D.C. | 0.00 | 0.00 | 0.00 | 0.50 | 0.50 | 0.75 | 1.00 | 1.00 |
| Total | 14.20 | 18.86 | 21.24 | 23.49 | 25.49 | 30.07 | 30.57 | 31.32 |

## JUNE 1 2000

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|
| Base Rate | 8.90 | 11.26 | 12.60 | 13.35 | 14.75 | 18.49 | 18.99 | 19.74 |
| Vac. | 0.00 | 0.50 | 1.00 | 1.50 | 1.75 | 2.00 | 2.00 | 2.00 |
| Dues Chkoff | 1.41 | 1.41 | 1.41 | 1.41 | 1.41 | 1.41 | 1.41 | 1.41 |
| Taxable | 10.31 | 13.17 | 15.01 | 16.26 | 17.91 | 21.90 | 22.40 | 23.15 |
| H&W | 3.50 | 3.50 | 3.50 | 3.50 | 3.50 | 3.50 | 3.50 | 3.50 |
| Pension | 0.00 | 0.60 | 1.20 | 1.65 | 2.00 | 2.40 | 2.40 | 2.40 |
| Int Pension | 0.00 | 1.30 | 1.30 | 1.30 | 2.00 | 2.40 | 2.40 | 2.40 |
| IMI Training | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 |
| Promotion | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 |
| Local Training | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 |
| NUITY/D.C. | 0.00 | 0.00 | 0.00 | 0.75 | 0.75 | 1.25 | 1.25 | 1.25 |
| Total | 14.53 | 19.29 | 21.73 | 24.18 | 26.18 | 31.07 | 31.57 | 32.32 |

## Indentured Before March 1998

Effective June 1, 1998

APPRENTICE TILE LAYER

INDENTURED BEFORE MARCH 98

WAGES AND FRINGES

JUNE 1 1998

| | 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|---|
| Base Rate | 8.92 | 11.18 | 12.40 | 17.86 | 18.36 | 19.11 |
| Vac. | 0.00 | 0.50 | 1.00 | 2.00 | 2.00 | 2.00 |
| Dues Chkoff | 1.14 | 1.14 | 1.14 | 1.14 | 1.14 | 1.14 |
| Taxable | 10.06 | 12.82 | 14.54 | 21.00 | 21.50 | 22.25 |
| H&W | 3.30 | 3.30 | 3.30 | 3.30 | 3.30 | 3.30 |
| sion | 0.00 | 0.50 | 1.10 | 2.30 | 2.30 | 2.30 |
| Int Pension | 0.00 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 |
| Promotion | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 |
| IMI Training | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 |
| Local Training | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 |
| ANNUITY/D.C. | 0.00 | 0.00 | 0.00 | 0.75 | 0.75 | 0.75 |
| Total | 13.88 | 18.44 | 20.76 | 29.17 | 29.67 | 30.42 |

14

## June 1, 1999

| | 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|---|
| Base Rate | 8.83 | 11.14 | 12.42 | 18.05 | 18.55 | 19.30 |
| Vac. | 0.00 | 0.50 | 1.00 | 2.00 | 2.00 | 2.00 |
| Dues Chkoff | 1.35 | 1.35 | 1.35 | 1.35 | 1.35 | 1.35 |
| Taxable | 10.18 | 12.99 | 14.77 | 21.40 | 21.90 | 22.65 |
| H&W | 3.40 | 3.40 | 3.40 | 3.40 | 3.40 | 3.40 |
| Pension | 0.00 | 0.55 | 1.15 | 2.35 | 2.35 | 2.35 |
| Int Pension | 0.00 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 |
| Promotion | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 |
| IMI Training | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 |
| Local Training | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 |
| ANNUITY/D.C. | 0.00 | 0.00 | 0.00 | 1.00 | 1.00 | 1.00 |
| Total | 14.20 | 18.86 | 21.24 | 30.07 | 30.57 | 31.32 |

## June 1, 2000

| | 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|---|
| Base Rate | 8.90 | 11.26 | 13.02 | 18.49 | 18.99 | 19.74 |
| Vac. | 0.00 | 0.50 | 1.00 | 2.00 | 2.00 | 2.00 |
| Dues Chkoff | 1.41 | 1.41 | 1.41 | 1.41 | 1.41 | 1.41 |
| Taxable | 10.31 | 13.17 | 14.93 | 21.90 | 22.40 | 23.15 |
| H&W | 3.50 | 3.50 | 3.50 | 3.50 | 3.50 | 3.50 |
| Pension | 0.00 | 0.60 | 0.70 | 2.40 | 2.40 | 2.40 |
| Int Pension | 0.00 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 |
| Promotion | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 |
| IMI Training | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 |
| Local Training | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 |
| ANNUITY/D.C. | 0.00 | 0.00 | 0.00 | 1.25 | 1.25 | 1.25 |
| Total | 14.53 | 19.29 | 20.35 | 31.07 | 31.57 | 32.32 |

15

# APPRENTICE TILE FINISHERS

Effective June 1st 1998 - Each period Equals 6 months

## TILE Finisher (Helper) Apprentice

### WAGES AND FRINGES

**JUNE 1 1998**

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|
| Base Rate | 7.82 | 8.92 | 10.08 | 11.18 | 11.79 | 12.40 | 12.50 | 13.10 |
| Vac. | 0.00 | 0.00 | 0.50 | 0.50 | 0.75 | 1.00 | 1.25 | 1.50 |
| Dues Chkoff | 1.14 | 1.14 | 1.14 | 1.14 | 1.14 | 1.14 | 1.14 | 1.14 |
| Taxable | 8.96 | 10.06 | 11.72 | 12.82 | 13.68 | 14.54 | 14.89 | 15.74 |
| H&W | 3.30 | 3.30 | 3.30 | 3.30 | 3.30 | 3.30 | 3.30 | 3.30 |
| Pension | 0.00 | 0.00 | 0.50 | 0.50 | 0.75 | 1.10 | 1.35 | 1.60 |
| Int Pension | 0.00 | 0.00 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 |
| Sub Fund | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 |
| IMI Trng | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 |
| Promotion | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 |
| Local Trng | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 |
| D.C. | 0.00 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 |
| Total | 13.28 | 14.38 | 17.64 | 18.94 | 20.05 | 21.26 | 22.36 | 23.46 |

**June 1, 1999**

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|
| Base Rate | 7.71 | 8.83 | 10.02 | 11.14 | 11.78 | 12.42 | 12.54 | 13.17 |
| Vac. | 0.00 | 0.00 | 0.50 | 0.50 | 0.75 | 1.00 | 1.15 | 1.25 |
| Dues Chkoff | 1.35 | 1.35 | 1.35 | 1.35 | 1.35 | 1.35 | 1.35 | 1.35 |
| Taxable | 9.06 | 10.18 | 11.87 | 12.99 | 13.88 | 14.77 | 15.14 | 16.02 |
| .W | 3.40 | 3.40 | 3.40 | 3.40 | 3.40 | 3.40 | 3.40 | 3.40 |
| Pension | 0.00 | 0.00 | 0.55 | 0.55 | 0.80 | 1.15 | 1.40 | 1.65 |
| Int Pension | 0.00 | 0.00 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 |
| Sub Fund | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 |
| IMI Trng | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 |
| Promotion | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 |
| Local Trng | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 |
| D.C. | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 |
| Total | 13.58 | 14.70 | 18.24 | 19.36 | 20.50 | 21.74 | 22.66 | 23.99 |

**June 1, 2000**

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|
| Base Rate | 7.75 | 8.90 | 10.12 | 11.26 | 11.93 | 12.60 | 12.94 | 13.35 |
| Vac. | 0.00 | 0.00 | 0.50 | 0.50 | 0.75 | 1.00 | 1.00 | 1.50 |
| Dues Chkoff | 1.41 | 1.41 | 1.41 | 1.41 | 1.41 | 1.41 | 1.41 | 1.41 |
| Taxable | 9.16 | 10.31 | 12.03 | 13.17 | 14.09 | 15.01 | 15.35 | 16.26 |
| H&W | 3.50 | 3.50 | 3.50 | 3.50 | 3.50 | 3.50 | 3.50 | 3.50 |
| Pension | 0.00 | 0.00 | 0.60 | 0.60 | 0.85 | 1.20 | 1.40 | 1.65 |
| Int Pension | 0.00 | 0.00 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 |
| Sub Fund | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 |
| IMI Trng | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 |
| Promotion | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 |
| Local Trng | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 |
| D.C. | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 |
| Total | 13.88 | 15.03 | 18.65 | 19.79 | 20.96 | 22.23 | 23.52 | 24.68 |

## E.   MARBLE MASON (MM)

### WAGES AND FRINGES

| | JUNE 1 1998 MM | JUNE 1 1999 MM | JUNE 1 2000 MM |
|---|---|---|---|
| Base Rate | 21.35 | 21.94 | 22.78 |
| Vac. | 2.00 | 2.00 | 2.00 |
| Dues Chkoff | 1.14 | 1.35 | 1.41 |
| Taxable | 24.49 | 25.29 | 26.19 |
| H&W | 3.30 | 3.40 | 3.50 |
| Pension | 2.30 | 2.35 | 2.40 |
| Int. Pension | 1.30 | 1.30 | 1.30 |
| IMI Training | 0.30 | 0.40 | 0.50 |
| Local Training | 0.07 | 0.07 | 0.07 |
| Ann/D.C. | 0.75 | 1.00 | 1.25 |
| Total | 32.51 | 33.81 | 35.21 |

## Marble Finisher (Helper) Wage Rates Effective:

| | JUNE 1 1998 | JUNE 1 1999 | JUNE 1 2000 |
|---|---|---|---|
| | FN | FN | FN |
| Base Rate | 17.34 | 17.53 | 17.97 |
| Vac. | 2.00 | 2.00 | 2.00 |
| Dues Chkoff | 1.14 | 1.35 | 1.41 |
| Taxable | 20.48 | 20.88 | 21.38 |
| H&W | 3.30 | 3.40 | 3.50 |
| Pension | 2.30 | 2.35 | 2.40 |
| Int Pension | 1.30 | 1.30 | 1.30 |
| Vib Fund | 0.50 | 0.50 | 0.50 |
| IMI Training | 0.30 | 0.40 | 0.50 |
| Local Training | 0.07 | 0.07 | 0.07 |
| Ann./D.C. | 0.75 | 1.00 | 1.25 |
| Total | 29.00 | 29.90 | 30.90 |

### G. MARBLE TRAINEE WAGES/FRINGES

Effective Dates June 1st, 1998 through May 31, 2003, all Marble Trainee Finishers are to be paid as follows: the columns set forth below represent six-month periods during which an Employee will be expected to work approximately 850 hours.

Effective June 1, 1998

#### MARBLE TRAINEE WAGES

JUNE 1 1998

| | 1 | 2 | 3 | 4* | 5 | 6* | 7 | 8* | 9 | 10** |
|---|---|---|---|---|---|---|---|---|---|---|
| 38 Rate | 7.92 | 9.02 | 10.18 | 11.28 | 11.89 | 12.50 | 13.20 | 13.55 | 14.55 | |
| Vac. | 0.00 | 0.00 | 0.50 | 0.50 | 0.75 | 1.00 | 1.25 | 1.50 | 1.75 | 1.75 |
| Dues Chkoff | 1.14 | 1.14 | 1.14 | 1.14 | 1.14 | 1.14 | 1.14 | 1.14 | 1.14 | 1.14 |
| Taxable | 9.06 | 10.16 | 11.82 | 12.92 | 13.78 | 14.64 | 14.99 | 15.84 | 16.44 | 17.44 |
| H&W | 3.30 | 3.30 | 3.30 | 3.30 | 3.30 | 3.30 | 3.30 | 3.30 | 3.30 | 3.30 |
| Pension | 0.00 | 0.00 | 0.00 | 0.50 | 0.75 | 1.10 | 1.35 | 1.60 | 2.00 | 2.00 |
| Int Pension | 0.00 | 0.00 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 2.30 |
| Sub Fund | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 |
| IMI Trng | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 |
| Local Trng | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 |
| D.C. | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.50 | 0.50 |
| Total | 13.23 | 14.33 | 17.79 | 18.89 | 20.00 | 21.21 | 22.31 | 23.41 | 24.41 | 25.41 |

## June 1, 2000

| | 1 | 2* | 3 | 4* | 5 | 6* | 7 | 8* | 9 | 10** |
|---|---|---|---|---|---|---|---|---|---|---|
| Base Rate | 7.81 | 8.93 | 10.12 | 11.24 | 11.88 | 12.52 | 12.64 | 13.27 | 13.67 | 14.67 |
| Vac. | 0.00 | 0.00 | 0.50 | 0.50 | 0.75 | 1.00 | 1.25 | 1.50 | 1.75 | 1.75 |
| Dues Chkoff | 1.35 | 1.35 | 1.35 | 1.35 | 1.35 | 1.35 | 1.35 | 1.35 | 1.35 | 1.35 |
| Taxable | 9.16 | 10.28 | 11.97 | 13.09 | 13.98 | 14.87 | 15.24 | 16.12 | 16.77 | 17.77 |
| H&W | 3.40 | 3.40 | 3.40 | 3.40 | 3.40 | 3.40 | 3.40 | 3.40 | 3.40 | 3.40 |
| Pension | 0.00 | 0.00 | 0.55 | 0.80 | 1.15 | 1.40 | 1.65 | 2.00 | 2.00 | |
| Int Pension | 0.00 | 0.00 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | |
| Sub Fund | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 |
| IMI Training | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 |
| Local Trng | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 |
| D.C. | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.50 | 0.50 |
| Total | 13.53 | 14.65 | 18.19 | 19.31 | 20.45 | 21.69 | 22.81 | 23.94 | 25.94 | |

## June 1, 1999

| | 1 | 2* | 3 | 4* | 5 | 6* | 7 | 8* | 9 | 10** |
|---|---|---|---|---|---|---|---|---|---|---|
| Base Rate | 7.85 | 9.00 | 10.22 | 11.36 | 12.03 | 12.70 | 13.04 | 13.45 | 13.85 | 14.85 |
| Vac. | 0.00 | 0.00 | 0.50 | 0.50 | 0.75 | 1.00 | 1.25 | 1.50 | 1.75 | 1.75 |
| Dues Chkoff | 1.41 | 1.41 | 1.41 | 1.41 | 1.41 | 1.41 | 1.41 | 1.41 | 1.41 | 1.41 |
| Taxable | 9.26 | 10.41 | 12.13 | 13.27 | 14.19 | 15.11 | 15.45 | 16.36 | 17.01 | 18.01 |
| H&W | 3.50 | 3.50 | 3.50 | 3.50 | 3.50 | 3.50 | 3.50 | 3.50 | 3.50 | 3.50 |
| Pension | 0.00 | 0.60 | 0.85 | 1.20 | 1.40 | 1.65 | 2.00 | 2.00 | | |
| Int Pension | 0.00 | 0.00 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | |
| Sub Fund | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 |
| IMI Training | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 |
| Local Trng | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 |
| D.C. | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.75 | 0.75 |
| Total | 13.83 | 14.98 | 18.60 | 19.74 | 20.91 | 22.18 | 23.47 | 24.63 | 25.63 | 26.63 |

*The Joint Apprenticeship & Training Committee will decide if the Employee should remain at that level or may be advanced to the next stage.

**Advancement to Marble Improver to be approved by the Joint Apprenticeship & Training Committee.

H.

## APPRENTICE MARBLE MASONS' and APPRENTICE FINISHERS/HELPERS WAGE RATES

Apprentices.

The Joint Apprenticeship and Training Committee shall advance all

### APPRENTICE MARBLE MASON
### WAGES AND FRINGES

Effective June 1 1998 - Each period equals 6 months

**JUNE 1 1998**

|  | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|
| Base Rate | 9.02 | 11.28 | 12.50 | 13.20 | 14.55 | 14.55 | 18.34 | 19.09 |
| Vac | 0.00 | 0.50 | 1.00 | 1.50 | 1.75 | 2.00 | 2.00 | 2.00 |
| Dues Ckoff | 1.14 | 1.14 | 1.14 | 1.14 | 1.14 | 1.14 | 1.14 | 1.14 |
| Taxable | 10.16 | 12.92 | 14.64 | 15.84 | 17.44 | 20.98 | 21.48 | 22.23 |
| H&W | 3.30 | 3.30 | 3.30 | 3.30 | 3.30 | 3.30 | 3.30 | 3.30 |
| Pension | 0.00 | 0.50 | 1.10 | 1.60 | 2.00 | 2.30 | 2.30 | 2.30 |
| Int Pension | 0.00 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 |
| IMI Training | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 |
| Local Training | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 |
| D.C. | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total | 13.83 | 18.39 | 20.71 | 22.91 | 24.91 | 29.00 | 29.50 | 30.25 |

**JUNE 1 1999**

|  | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|
| Base | 8.93 | 11.24 | 12.52 | 13.27 | 14.67 | 18.03 | 18.53 | 19.28 |
| Vac. | 0.00 | 0.50 | 1.00 | 1.50 | 1.75 | 2.00 | 2.00 | 2.00 |
| Dues Ckoff | 1.35 | 1.35 | 1.35 | 1.35 | 1.35 | 1.35 | 1.35 | 1.35 |
| axable | 10.28 | 13.09 | 14.87 | 16.12 | 17.77 | 21.38 | 21.88 | 22.63 |
| H&W | 3.40 | 3.40 | 3.40 | 3.40 | 3.40 | 3.40 | 3.40 | 3.40 |
| Pension | 0.00 | 0.55 | 1.15 | 1.65 | 2.00 | 2.35 | 2.35 | 2.35 |
| Int Pension | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 |
| IMI Training | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 |
| Local Training | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 |
| D.C. | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total | 14.15 | 18.81 | 21.19 | 23.44 | 25.44 | 29.90 | 30.40 | 31.15 |

20

**JUNE 1 2000**

|  | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|
| Base Rate | 9.00 | 11.36 | 12.70 | 13.45 | 14.85 | 18.72 | 19.47 | 20.22 |
| Vac. | 0.00 | 0.50 | 1.00 | 1.50 | 1.75 | 2.00 | 2.00 | 2.00 |
| Dues Ckoff | 1.41 | 1.41 | 1.41 | 1.41 | 1.41 | 1.41 | 1.41 | 1.41 |
| Taxable | 10.41 | 13.27 | 15.11 | 16.36 | 18.01 | 22.13 | 22.88 | 23.63 |
| H&W | 3.50 | 3.50 | 3.50 | 3.50 | 3.50 | 3.50 | 3.50 | 3.50 |
| Pension | 0.00 | 0.60 | 1.20 | 1.50 | 2.00 | 2.40 | 2.40 | 2.40 |
| Int Pension | 0.00 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 |
| IMI Training | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 |
| Local Trng | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 |
| D.C. | 0.00 | 0.00 | 0.00 | 0.75 | 0.75 | 1.25 | 1.25 | 1.25 |
| Total | 14.48 | 19.24 | 21.68 | 23.98 | 26.13 | 31.15 | 31.90 | 32.65 |

### APPRENTICE MARBLE FINISHERS

Effective June 1, 1998 - Each period is equal to 6 Months

MARBLE Finisher (Helper) Apprentice

### WAGES AND FRINGES

**JUNE 1 1998**

|  | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|
| Base Rate | 7.92 | 9.02 | 10.18 | 11.28 | 11.89 | 12.50 | 12.60 | 13.20 |
| Vac. | 0.00 | 0.00 | 0.50 | 0.50 | 0.75 | 1.00 | 1.25 | 1.50 |
| Dues Chkoff | 1.14 | 1.14 | 1.14 | 1.14 | 1.14 | 1.14 | 1.14 | 1.14 |
| Taxable | 9.06 | 10.16 | 11.82 | 12.92 | 13.78 | 14.64 | 14.99 | 15.84 |
| H&W | 3.30 | 3.30 | 3.30 | 3.30 | 3.30 | 3.30 | 3.30 | 3.30 |
| Pension | 0.00 | 0.00 | 0.50 | 0.50 | 0.75 | 1.10 | 1.35 | 1.60 |
| Int Pension | 0.00 | 0.00 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 |
| Sub Fund | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 |
| IMI Training | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 |
| Local Training | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 |
| ANNUITY/D.C. | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.50 | 0.50 |
| Total | 13.23 | 14.33 | 17.79 | 18.89 | 20.00 | 21.21 | 22.31 | 23.41 |

21

## June 1, 1999

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|
| Base Rate | 7.81 | 8.93 | 10.12 | 11.24 | 11.88 | 12.52 | 12.64 | 13.27 |
| Vac. | 0.00 | 0.00 | 0.50 | 0.50 | 0.75 | 1.00 | 1.25 | 1.50 |
| Dues Ckoff | 1.35 | 1.35 | 1.35 | 1.35 | 1.35 | 1.35 | 1.35 | 1.35 |
| Taxable | 9.16 | 10.28 | 11.97 | 13.09 | 13.98 | 14.87 | 15.24 | 16.12 |
| H&W | 3.40 | 3.40 | 3.40 | 3.40 | 3.40 | 3.40 | 3.40 | 3.40 |
| Pension | 0.00 | 0.00 | 0.55 | 0.55 | 0.80 | 1.15 | 1.40 | 1.65 |
| Int Pension | 0.00 | 0.00 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 |
| Sub Fund | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 |
| IMI Training | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 |
| Local Training | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 |
| D.C. | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.50 | 0.50 |
| Total | 13.53 | 14.65 | 18.19 | 19.31 | 20.45 | 21.69 | 22.81 | 23.94 |

## June 1, 2000

| | 1 | 2* | 3 | 4* | 5 | 6* | 7 | 8* |
|---|---|---|---|---|---|---|---|---|
| Base Rate | 7.85 | 9.00 | 10.22 | 11.36 | 12.03 | 12.70 | 13.04 | 13.45 |
| Vac. | 0.00 | 0.00 | 0.50 | 0.50 | 0.75 | 1.00 | 1.00 | 1.50 |
| Dues Chkoff | 1.41 | 1.41 | 1.41 | 1.41 | 1.41 | 1.41 | 1.41 | 1.41 |
| Taxable | 9.26 | 10.41 | 12.13 | 13.27 | 14.19 | 15.11 | 15.45 | 16.36 |
| H&W | 3.50 | 3.50 | 3.50 | 3.50 | 3.50 | 3.50 | 3.50 | 3.50 |
| Pension | 0.00 | 0.00 | 0.60 | 0.60 | 0.85 | 1.20 | 1.40 | 1.65 |
| Int Pension | 0.00 | 0.00 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 |
| Sub Fund | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 |
| IMI Trng | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 |
| Local Training | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 |
| J.C. | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.75 | 0.75 |
| Total | 13.83 | 14.98 | 18.60 | 19.74 | 20.91 | 22.18 | 23.47 | 24.63 |

# TERRAZZO WORKERS' WAGES/FRINGE

I.

## TERRAZZO WORKERS (TW)

Effective June 1, 1998

| | JUNE 1 1998 TW | JUNE 1 1999 TW | JUNE 1 2000 TW |
|---|---|---|---|
| Base Rate | 20.78 | 21.37 | 22.21 |
| Vacation Holiday | 2.00 | 2.00 | 2.00 |
| Dues Ckoff | 1.14 | 1.35 | 1.41 |
| Taxable | 23.92 | 24.72 | 25.62 |
| H&W | 3.30 | 3.40 | 3.50 |
| Pension | 2.30 | 2.35 | 2.40 |
| Int. Pension | 1.30 | 1.30 | 1.30 |
| IMI Training | 0.30 | 0.40 | 0.50 |
| Local Training | 0.10 | 0.10 | 0.10 |
| Promotion | 0.10 | 0.10 | 0.10 |
| Annuity | 0.75 | 1.00 | 1.25 |
| Total | 32.04 | 33.34 | 34.74 |

## Terrazzo Finisher (Helper) Wages and Fringes. Effective June 1, 1998.

| | JUNE 1 1998 FN | JUNE 1 1999 FN | JUNE 1 2000 FN |
|---|---|---|---|
| Base Rate | 17.41 | 17.60 | 18.04 |
| Vacation Holiday | 2.00 | 2.00 | 2.00 |
| Dues Checkoff | 1.14 | 1.35 | 1.41 |
| Taxable | 20.55 | 20.95 | 21.45 |
| Health / Welfare | 3.30 | 3.40 | 3.50 |
| Pension | 2.30 | 2.35 | 2.40 |
| Int. Pension | 1.30 | 1.30 | 1.30 |
| Sub Fund | 0.50 | 0.50 | 0.50 |
| IMI Training | 0.30 | 0.40 | 0.50 |
| Promotion | 0.20 | 0.20 | 0.20 |
| Local Training | 0.07 | 0.07 | 0.07 |
| Annuity/D.C. | 0.75 | 1.00 | 1.25 |
| Total | 29.27 | 30.17 | 31.17 |

## K. TERRAZZO TRAINEE WAGES/FRINGES

Effective June 1, 1998 through May 31, 2003, all Terrazzo Trainee Finishers are to be paid as follows: The columns set forth below represent six-month periods during which an Employee will be expected to work approximately 850 hours.

### Effective June 1, 1998

**TERRAZZO TRAINEE WAGES AND FRINGES**

June 1, 1998

| | 1 | 2* | 3 | 4* | 5 | 6* | 7 | 8* | 9 | 10** |
|---|---|---|---|---|---|---|---|---|---|---|
| Base Rate | 7.82 | 8.92 | 10.08 | 11.18 | 11.79 | 12.40 | 13.10 | 13.45 | 13.57 | 14.57 |
| Dues | 1.14 | 1.14 | 1.14 | 1.14 | 1.14 | 1.14 | 1.14 | 1.14 | 1.14 | 1.14 |
| Vac. | 0.00 | 0.00 | 0.50 | 0.75 | 1.00 | 1.25 | 1.50 | 1.75 | 1.75 | 1.75 |
| Ckoff | | | | | | | | | | |
| Taxable | 8.96 | 10.06 | 11.72 | 12.82 | 13.68 | 14.54 | 15.74 | 16.34 | 17.34 | |
| H&W | 3.30 | 3.30 | 3.30 | 3.30 | 3.30 | 3.30 | 3.30 | 3.30 | 3.30 | 3.30 |
| Pension | 0.00 | 0.00 | 0.50 | 0.50 | 0.75 | 1.10 | 1.35 | 1.60 | 2.00 | 2.00 |
| Int Pension | 0.00 | 0.50 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 |
| Sub Fund | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 |
| IMI Training | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 |
| Promotion | 0.20 | 0.20 | 0.20 | 0.20 | 0.20 | 0.20 | 0.20 | 0.20 | 0.20 | 0.20 |
| Local Trng | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 |
| D.C. | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 |
| Total | 13.33 | 14.43 | 17.89 | 18.99 | 20.10 | 21.31 | 22.41 | 23.51 | 24.51 | 25.51 |

### June 1, 2000

| | 1 | 2* | 3 | 4* | 5 | 6* | 7 | 8* | 9 | 10** |
|---|---|---|---|---|---|---|---|---|---|---|
| Int Pension | 0.00 | 0.00 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 |
| Sub Fund | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 |
| IMI Training | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 |
| Promotion | 0.20 | 0.20 | 0.20 | 0.20 | 0.20 | 0.20 | 0.20 | 0.20 | 0.20 | 0.20 |
| Local Training | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 |
| ANNUITY/ D.C. | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total | 13.63 | 14.75 | 18.29 | 19.41 | 20.55 | 21.79 | 22.91 | 24.04 | 25.04 | 26.04 |

| | 1 | 2* | 3 | 4* | 5 | 6* | 7 | 8* | 9 | 10** |
|---|---|---|---|---|---|---|---|---|---|---|
| Base Rate | 7.75 | 8.90 | 10.12 | 11.26 | 11.93 | 12.60 | 13.35 | 13.75 | | 14.75 |
| Vacation | 0.00 | 0.50 | 0.50 | 0.75 | 1.00 | 1.00 | 1.25 | 1.50 | 1.75 | 1.75 |
| Holiday | | | | | | | | | | |
| Dues | 1.41 | 1.41 | 1.41 | 1.41 | 1.41 | 1.41 | 1.41 | 1.41 | 1.41 | 1.41 |
| Checkoff | | | | | | | | | | |
| Taxable | 9.16 | 10.31 | 12.03 | 13.17 | 14.09 | 15.01 | 15.35 | 16.26 | 16.91 | 17.91 |
| Health/Welfare | 3.50 | 3.50 | 3.50 | 3.50 | 3.50 | 3.50 | 3.50 | 3.50 | 3.50 | 3.50 |
| Pension | 0.00 | 0.60 | 0.60 | 0.85 | 1.30 | 1.40 | 1.65 | 2.00 | 2.00 | |
| Int Pension | 0.00 | 0.00 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 |
| Sub Fund | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 |
| IMI Trng | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 |
| Promotion | 0.20 | 0.20 | 0.20 | 0.20 | 0.20 | 0.20 | 0.20 | 0.20 | 0.20 | 0.20 |
| Local Trng | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 |
| D.C. | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.75 | 0.75 | 0.75 | 0.75 |
| Total | 13.93 | 15.08 | 18.70 | 19.84 | 21.01 | 22.28 | 23.57 | 24.73 | 25.73 | 26.73 |

*The Joint Apprenticeship & Training Committee will decide if the Employee should remain at that level or may be advanced to the next stage.

**Advancement to Terrazzo Improver to be approved by the Joint Apprenticeship & Training Committee.

L.

## APPRENTICE TERRAZZO WORKERS/FINISHERS WAGE RATES
### Joint Apprenticeship and Training committee shall advance all Apprentices.

### APPRENTICE TERRAZZO WORKERS
Effective June 1 1998 - Each period below shall equal 6 months

APPRENTICE TERRAZZO WORKER
WAGES AND FRINGES

| | JUNE 1 1998 | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| Base Rate | 8.92 | 11.18 | 12.4 | 13.10 | 14.45 | 17.91 | 18.41 | 19.16 |
| Vacation Holiday | 0.00 | 0.50 | 1.00 | 1.50 | 1.75 | 2.00 | 2.00 | 2.00 |
| Dues Checkoff | 1.14 | 1.14 | 1.14 | 1.14 | 1.14 | 1.14 | 1.14 | 1.14 |
| Taxable | 10.06 | 12.82 | 14.54 | 15.74 | 17.34 | 21.05 | 21.55 | 22.30 |
| Health / Welfare | 3.30 | 3.30 | 3.30 | 3.30 | 3.30 | 3.30 | 3.30 | 3.30 |
| Pension | 0.00 | 0.50 | 1.10 | 1.60 | 2.00 | 2.30 | 2.30 | 2.30 |
| Int Pension | 0.00 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 |
| IMI Training | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 |
| Promotion | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 |
| Local Training | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 |
| D.C. | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total | 13.83 | 18.39 | 20.71 | 22.91 | 24.91 | 29.17 | 29.67 | 30.42 |

| | JUNE 1 1999 | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| Base Rate | 8.83 | 11.14 | 12.42 | 13.17 | 14.57 | 18.10 | 18.60 | 19.35 |
| Vac. | 0.00 | 0.50 | 1.00 | 1.50 | 1.75 | 2.00 | 2.00 | 2.00 |
| Dues Chkoff | 1.35 | 1.35 | 1.35 | 1.35 | 1.35 | 1.35 | 1.35 | 1.35 |
| Taxable | 10.18 | 12.99 | 14.77 | 16.02 | 17.67 | 21.45 | 21.95 | 22.70 |
| H&W | 3.40 | 3.40 | 3.40 | 3.40 | 3.40 | 3.40 | 3.40 | 3.40 |
| Pension | 0.00 | 0.55 | 1.15 | 1.65 | 2.00 | 2.35 | 2.35 | 2.35 |
| Int Pension | 0.00 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 |
| IMI Training | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 |
| Promotion | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 |
| Local Training | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 |
| ANNUITY/D.C. | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total | 14.15 | 18.81 | 21.19 | 23.44 | 25.44 | 30.07 | 30.57 | 31.32 |

| | JUNE 1 2000 | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| Base Rate | 8.90 | 11.26 | 12.60 | 13.35 | 14.75 | 18.79 | 19.54 | 20.29 |
| Vacation Holiday | 0.00 | 0.60 | 1.20 | 1.50 | 1.75 | 2.00 | 2.00 | 2.00 |
| Dues Checkoff | 1.41 | 1.41 | 1.41 | 1.41 | 1.41 | 1.41 | 1.41 | 1.41 |
| Taxable | 10.31 | 13.17 | 15.01 | 16.26 | 17.91 | 22.20 | 22.95 | 23.70 |
| Health / Welfare | 3.50 | 3.50 | 3.50 | 3.50 | 3.50 | 3.50 | 3.50 | 3.50 |
| Pension | 0.00 | 0.60 | 1.20 | 1.65 | 2.00 | 2.40 | 2.40 | 2.40 |
| Int Pension | 0.00 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 |
| IMI Training | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 |
| Promotion | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 |
| Local Training | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 |
| ANNUITY/D.C. | 0.00 | 0.00 | 0.00 | 0.75 | 0.75 | 1.00 | 1.25 | 1.25 |
| Total | 14.48 | 19.24 | 21.68 | 24.13 | 26.13 | 31.07 | 32.07 | 32.82 |

### APPRENTICE TERRAZZO FINISHERS
TERRAZZO Finisher (Helper) Apprentice
Each period shall equal 6 Months - Effective June 1 1998
WAGES AND FRINGES

| | JUNE 1 1998 | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| Base Rate | 7.82 | 8.92 | 10.08 | 11.18 | 11.79 | 12.40 | 12.50 | 13.10 |
| Vac. | 0.00 | 0.50 | 0.50 | 0.50 | 0.75 | 0.75 | 1.00 | 1.00 |
| Dues Chkoff | 1.14 | 1.14 | 1.14 | 1.14 | 1.14 | 1.14 | 1.14 | 1.14 |
| Taxable | 8.96 | 10.06 | 11.72 | 12.82 | 13.68 | 14.54 | 14.89 | 15.74 |
| Health / Welfare | 3.30 | 3.30 | 3.30 | 3.30 | 3.30 | 3.30 | 3.30 | 3.30 |
| Pension | 0.00 | 0.00 | 0.00 | 0.00 | 0.50 | 0.75 | 1.10 | 1.60 |
| Int Pension | 0.00 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 |
| Sub Fund | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 |
| IMI Training | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 |
| Promotion | 0.20 | 0.20 | 0.20 | 0.20 | 0.20 | 0.20 | 0.20 | 0.20 |
| Local Training | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 |
| ANNUITY/D.C. | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total | 13.33 | 14.43 | 16.26 | 17.89 | 18.99 | 20.10 | 21.31 | 22.41 |

## June 1, 1999

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|
| Base Rate | 7.71 | 8.83 | 10.02 | 11.14 | 11.78 | 12.42 | 12.54 | 13.17 |
| Vacation Holiday | 0.00 | 0.00 | 0.50 | 0.50 | 0.75 | 1.00 | 1.25 | 1.50 |
| Dues Checkoff | 1.35 | 1.35 | 1.35 | 1.35 | 1.35 | 1.35 | 1.35 | 1.35 |
| Taxable | 9.06 | 10.18 | 11.87 | 12.99 | 13.88 | 14.77 | 15.14 | 16.02 |
| Health / Welfare | 3.40 | 3.40 | 3.40 | 3.40 | 3.40 | 3.40 | 3.40 | 3.40 |
| Pension | 0.00 | 0.00 | 0.55 | 0.55 | 0.80 | 1.15 | 1.40 | 1.65 |
| Int Pension | 0.00 | 0.00 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 |
| Sub Fund | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 |
| IMI Training | 0.40 | 0.40 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 |
| Promotion | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 |
| Local Training | 0.20 | 0.20 | 0.20 | 0.20 | 0.20 | 0.20 | 0.20 | 0.20 |
| ANNUITY/D.C. | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 |
| | | | | | | | 0.50 | 0.50 |
| Total | 13.53 | 14.75 | 18.29 | 19.41 | 20.55 | 21.79 | 22.91 | 24.04 |

## June 1, 2000

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|
| Base Rate | 7.75 | 8.90 | 10.12 | 11.26 | 11.93 | 12.60 | 12.94 | 13.35 |
| Vacation Holiday | 0.00 | 0.00 | 0.50 | 0.50 | 0.75 | 1.00 | 1.00 | 1.50 |
| Dues Checkoff | 1.41 | 1.41 | 1.41 | 1.41 | 1.41 | 1.41 | 1.41 | 1.41 |
| Taxable | 9.16 | 10.31 | 12.03 | 13.17 | 14.09 | 15.01 | 15.35 | 16.26 |
| Health / Welfare | 3.50 | 3.50 | 3.50 | 3.50 | 3.50 | 3.50 | 3.50 | 3.50 |
| Pension | 0.00 | 0.00 | 0.60 | 0.60 | 0.85 | 1.20 | 1.40 | 1.65 |
| Int Pension | 0.00 | 0.00 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 |
| Sub Fund | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 |
| IMI Training | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 |
| Promotion | 0.20 | 0.20 | 0.20 | 0.20 | 0.20 | 0.20 | 0.20 | 0.20 |
| Local Training | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 |
| ANNUITY/D.C. | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.75 | 0.75 |
| Total | 13.93 | 15.08 | 18.70 | 19.84 | 21.01 | 22.28 | 23.57 | 24.73 |

Notes:

28

29

Notes:

30

Notes:

31

Notes:

32

Note:

33

Notes:

34

35

4.3. Advancement.

A. **Improver.** Tile, Marble and Terrazzo Finishers are to be advanced to Improver status based on the Joint Apprenticeship & Training Fund Committee approval. The Joint Apprenticeship & Training Fund Committee shall be comprised of three Union appointees and three Association appointees, provided, however, that the voting strength of both sides shall always be equal. The Committee shall meet quarterly or at such other times as they may designate.

1. Improvers

    a. First Year – $.50 per hour more than the full Finishers' base rate, with Tile Layers fringe benefits. To be reviewed quarterly during the first year worked and must attend training classes during the year. Employee to be moved to another Employer at the discretion of the Joint Apprenticeship & Training Committee.

    b. Second Year – $.50 per hour more than First Year Improver base rate, with Tile Layer fringe benefits. Must attend training classes during the year. Employee to be moved to another Employer at the discretion of the Committee.

    c. Third Year – $0.75 per hour more than the Second Year Improver base rate, with Tile Layer fringe benefits, and to be reviewed quarterly. Must attend training classes during the year. Employee to be moved to another Employer at the discretion of the Committee.

    d. After three years Improver to receive Full Tile, Marble or Terrazzo Journeyperson's wages and fringe benefits or return to original status prior to becoming an improver, at the discretion of the Joint Apprenticeship & Training Committee.

    Present Full Finishers and present Trainee Finishers will be protected by the Committee to insure job security.

C. **Certified Terrazzo Grinder.** Certified Terrazzo Grinder shall receive $0.50 more per hour than Terrazzo Finishers base rate, for all hours worked and Terrazzo Finisher fringe benefits. Certified Terrazzo Grinder status shall be determined by the Joint Apprenticeship & Training Committee.

D. **Terrazzo Finishers/Terrazzo Grinders:** Employees grinding vertical work and stairs shall receive an additional $1.50 per hour above their respective base rate.

E. **Journeymen Testing.** Employees who have been journeymen less than four years shall be subject to testing once during the term of the contract. The form of the test shall be designed to establish journeymen competency to perform the thick-bed application for installation of material. In the event that such journeyperson fails to qualify under the test given, his base rate will be subject to reduction to not less than the Improvers' wage rate for first year Improver, at the discretion of the Apprenticeship & Training Fund Committee, unless he attends and successfully completes a training course conducted by the Apprenticeship & Training Fund.

4.4. **Overtime, Holiday Pay & Work Hours.**

A. Eight consecutive hours, exclusive of an unpaid ½ hour lunch period, shall constitute a regular day's work. The Employer, without the payment of premium time, may modify the starting time of any Employee from the regular starting time of 8:00 A.M. to any time from 7:00 A.M. to 9:00 A.M.

B. An overtime rate of one and one half times the Employee's regular base rate of pay shall be paid for the first two hours of overtime work Monday through Friday and for the first eight hours of work on Saturday.

Double time shall be paid for all hours worked in excess of ten hours in any one day, Monday through Friday, for all hours worked in excess of eight hours on Saturday, for all hours worked on Sundays as well as on any of the following holidays: New Year's Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day and Christmas Day.

C. Employees with good attendance records will be given preference for overtime work. Any Employee without an excused absence during any pay period may not be eligible for overtime work assignments during the next pay period.

D. Employees reporting for work upon order by Employer and not put to work for any reason except weather conditions, fire, accident, or other unavoidable causes shall receive two hours show up pay for lost time.

E. Any Employer who employs an Employee retired from the Pension Fund will report the same to the Union business agent. All active workers shall be employed before retirees may return to work.

---

4.5. **Maintenance Work.** Maintenance work shall consist of all repair and patching of tile, marble or terrazzo, to restore any damaged work to its original condition. All overtime in maintenance work shall be paid at the rate of time and one half. Maintenance work performed on Sundays and holidays shall be paid at the double time rate. The maintenance work provision does not include renovation, remodeling or new work. Should the Employer engage in maintenance work in any building, plant, or facility, the Employer shall contact the Union for its approval of such work at least 48 hours prior to starting. Failure of the Employer to contact the Union within the prescribed time will result in the denial of the maintenance work provision of this Agreement. Maintenance work shall be performed under the provisions of the National Maintenance Agreement providing the projects are approved by the Bricklayers and Allied Craftworkers International Union.

4.6. **Fringe Benefits.** The Employer shall, on or before the 15th day of each month, make the contributions required hereunder accompanied by such reports as the Trustees may designate. The Employer specifically understands that, in addition to all of the other terms and conditions contained therein, the Agreement and Declaration of Trust of each respective Fringe Benefit Fund empowers the Trustees to require the Employer to post cash as a security deposit in the amount set by the Trustees in specified circumstances and to impose interest, liquidated damages, or such other remedies on a uniform basis for failure of any Employer to make the required contributions in proper amount when due. The terms of each Fringe Benefit Fund's Plan, Trust or any Policies and Procedures, as amended from time to time, are incorporated herein and made a part of this Agreement.

Whenever the Trustees of the Funds believe it to be in the best interest of the Fringe Benefit Funds to require an Employer to pay contributions more frequently than monthly, including weekly, the Trustees shall so advise the Employer of their demand in writing and the Employer shall comply therewith. Circumstances which may give rise to a determination by the Trustees that a more frequent contribution schedule is required due to frequent delinquency, lack of previous payment history with the Employer, or any other facts or circumstances which give rise to a concern by the Trustees that contributions may not be made timely in the future. Any decision rendered under this Section shall be in the sole discretion of the Trustees.

A. **Health and Welfare.** The Associations and the Union, in conjunction with the other unions and Employer representative, have created an Insurance Trust Fund, known as BAC Local 32 Insurance Fund, administered jointly as provided by Federal law. Each Employer shall contribute to the Insurance Fund the hourly contribution rate set forth in Article V hereof, for each hour worked by each Employee performing work within the trade jurisdiction of the Union. An Employee who has a financial interest as a sole proprietor, partner, shareholder, officer, or some similar financial interest, shall pay to the Insurance Fund on the basis of 160 hours per month.

B. **Pension.** The Associations and the Union, in conjunction with other unions and Employer representatives, have created a Pension Fund, known as the BAC Local 32 Pension Fund, administered jointly as provided by Federal Law. The Employer agrees to contribute the hourly contribution rate

set forth in Article IV hereof for each hour worked by each Employee performing work within the trade jurisdiction of the Union. Any person performing work within the trade jurisdiction of the Union who has a financial interest in a company, whether the interest be as sole proprietor, partner, shareholder, officer, or some similar financial interest shall pay to the basis of 160 hours per month.

### C.   Bricklayers and Trowel Trades International Pension Fund and Participation Agreement.

1.

The Employer agrees to make payments to the Bricklayers and Trowel Trades International Pension Fund for each hour, or portion thereof, worked by an Employee covered by this Agreement, in accordance with the rates set forth in Article IV hereof. An Employee has a financial interest in a company, direct or indirect, which is signatory to this Agreement, whether the interest be as a sole proprietor, partner, shareholder, officer, or some similar financial interest shall pay to the Fund on the basis of 160 hours per month.

a.   Contributions shall be paid on behalf of any Employee starting with the Employee's first day of employment in a job classification covered by the Collective Bargaining Agreement. This includes, but is not limited to apprentice's, finishers, trainees and probationary Employees.

b.   The payments to the International Pension Fund required above shall be made to the Bricklayers and Trowel Trades International Pension Fund, which was established under an Agreement and Declaration of Trust dated June 19, 1972, a copy of which has been signed by the Employer in the space provided at the end of such agreement, or to which the Employer has become bound by the signing of some other written instrument.

c.   It is agreed that all contributions shall be made at such time and in such manner as the Trustees require; and the Trustees shall have the authority to have an independent Certified Public Accountant audit the payroll and wage records of the Employer for the purpose of determining the accuracy of contributions to the Pension Fund.

d.   If an Employer fails to make contributions to the Pension Fund within 15 days after the date required by the Trustee, the Union shall have the right to take whatever steps are necessary to secure compliance with the Agreement, any provision of the Collective Bargaining Agreement to the contrary notwithstanding and the Employer shall be liable for all costs for collecting the payments due together with

38

e.   It is agreed that the Pension Plan adopted by the Trustees of the said Pension Fund shall at all times conform with the requirements of the Internal Revenue Code so as to enable the Employer at all times to treat contributions to the Pension Fund as a deduction for income tax purposes.

f.   The parties agree that this Participation Agreement shall be considered a part of the Collective Bargaining Agreement between the undersigned parties.

g.   Copies of the Collective Bargaining Agreement and all renewal or extension agreements will be furnished promptly to the Pension Fund Office and, if not consistent with the Participation Agreement, can be used by the Trustees as the basis for termination of participation of the Employer.

h.   The expiration date of the present Collective Bargaining Agreement between the undersigned parties is herein provided.

### D.   Defined Contribution Pension (Annuity).

The Association and the Union, in conjunction with other unions and employer representatives, have created a Defined Contribution Pension Plan (Annuity), known as the Tile, Terrazzo, Marble Industry Defined Contribution Plan, administered jointly as provided by Federal Law. The Employer agrees to contribute the hourly contribution rate set forth in Article IV hereof for each hour worked by each employee performing work within the trade jurisdiction of the Union. Any person performing work within the trade jurisdiction of the Union who has a financial interest in a company, whether the interest be a sole proprietor, partner, shareholder, or some similar financial interest, shall pay to the Fund on the basis of 160 hours per month.

### E.   Vacation & Holiday.

The Associations and the Union, have created a Vacation and Holiday Trust Fund administered jointly as provided by Federal Law. The Employer agrees to contribute the hourly contribution rate set forth in Article IV hereof, for each hour worked by each Employee covered hereunder (Trainees refer to Schedule) to the Vacation and Holiday Fund. All amounts contributed to the Vacation and Holiday Fund shall be subject to all applicable State and Federal employment taxes, including the withholding of income taxes. This amount shall be paid to the Trust Fund for distribution to

39

attorney's fees and such liquidated damages which may be assessed by the Trustees. The Employer's liability for payment hereunder shall not be subject to the grievance or arbitration procedure nor to any "no strike" clause which may be provided under the Collective Bargaining Agreement.

the Employees and identified as Vacation and Holiday pay. The distribution to Employees shall take place during the calendar year, as determined by and based on a formula agreed upon by the Trustees. Any person performing work within the trade jurisdiction of the Union who has a financial interest in a company, direct or indirect, which is a signatory to this Agreement, whether the interest be as a sole proprietor, partner, shareholder, officer, or some similar financial interest, shall pay to the Fund on the basis of 160 hours per month.

F.    Supplemental Unemployment Benefit Funds/Finishers Only.    The parties agree that there shall be created a Supplemental Unemployment Benefit Fund. It shall be administered jointly by an equal number of Employer and Employee Trustees under a written agreement and declaration of trust. The Associations shall designate a written agreement and declaration of trust. The Associations shall designate and appoint Employer Trustees, and the Union shall designate and appoint Employee Trustees. Each Employer shall pay to the Supplemental Unemployment Benefit Fund the hourly contribution rate set forth in Article IV hereof per hour for all hours worked by the appropriate craft, Finishers, Trainees and Finisher Apprentices in the bargaining unit covered by the Agreement. Any person performing work within the trade jurisdiction of the Union who has a financial interest in a company, direct or indirect, which is a signatory to this Agreement, whether the interest be as sole proprietor, partner, shareholder, officer, or some similar financial interest shall pay to the Fund. The amount that would otherwise have been paid to this Fund shall be paid monthly to such depository or administrative office as the Union shall designate.

G.    Local Training Fund.    The Employer agrees to pay to the Trustees of the Tile, Terrazzo and Marble Industry Apprenticeship & Training Fund or to such depository as the Trustees shall designate, the hourly contribution rate set forth in this Article IV for all hours worked by all Employees covered by this Agreement (including Trainees). Said money shall be paid and applied in accordance with the Plan and Trust Agreement establishing such Fund, together with any amendments thereto, and such lawful rules and regulations as the Trustees may from time to time establish. The Employer agrees to be bound by said Plan and Trust Agreement, any amendments thereto, and rules and regulations established by the Trustees. Any person subject to this provision performing work within the trade jurisdiction of the Union who has a financial interest in a company, direct or indirect, which is signatory to this Agreement, whether the interest be as a sole proprietor, partner, shareholder, officer, or some similar financial interest, shall pay contributions on the basis of 160 hours per month.

H.    International Masonry Institute Training Fund.    The Employer agrees to contribute to the International Masonry Institute Training Fund for all hours worked by Employees covered by this Agreement the hourly contribution rates set forth in Article IV hereof. The payments required by this Subsection shall be made to the International Masonry Institute, which was established under an Agreement and Declaration of Trust, March 14, 1961, as the successor trust to the predecessor International Masonry Institute (established under an Agreement and Declaration of Trust, July 22, 1970, as amended November

40

11, 1988) and/or to the predecessor International Masonry Apprenticeship Trust established under an Agreement and Declaration of Trust, November 6, 1974. Any person subject to this provision performing work within the trade jurisdiction of the Union who has a financial interest in a company, direct or indirect, which is signatory to this Agreement, whether the interest be as a sole proprietor, partner, shareholder, officer, or some similar financial interest, shall pay contributions on the basis of 160 hours per month.

I.    Industry Promotion Fund.    In order to expand the market for the services of the Ceramic Tile, Marble and Terrazzo Industries, to improve the technical and business skills of the Employers, to stabilize and improve Employer-Union relations and to improve the training and employment opportunities for Employees, the Employer agrees to promote a program of education, training, research, promotion and administration of collective bargaining agreements as shall be determined by the Trustees of each Association's Industry Promotion Fund by each Association, which shall be created as hereinafter provided.   There is hereby created an Industry Promotion Fund to be administered by four Employer Trustees under a written declaration of trust. Each Association shall appoint the Employer Trustees to administer its respective Industry Promotion Fund. The Employer signatory hereto agrees to be bound by the terms and conditions of the aforesaid trust agreement and all subsequent amendments thereto including any lawful rules and regulations adopted by the Trustees of said Fund. The Trustees of such Fund shall be responsible for the lawful operation of the Fund as required by law.

Each Employer shall pay to the appropriate Industry Advancement Fund for each craft, as described in Article IV hereof, the hourly contribution rate set forth in this Article IV for each hour worked by each Employee covered hereunder, for whom such contribution is required. Any person performing work within the trade jurisdiction of the Union who has financial interest in a company, direct or indirect which is signatory to this Agreement, whether the interest be as a sole proprietor, partner, shareholder, officer, or some similar financial interest, shall pay to the Fund on the basis of 160 hours per month.

J.    Union Dues - Check Off.    The Employer shall deduct from the wages of each Employee who has individually authorized such deduction in writing the amount designated as dues or assessments, as set forth in Article IV hereof for each hour worked by each covered Employee, and shall remit the amount so deducted to the Union monthly on or before the fifteenth (15th) day of the month following the month in which the wages were earned. The amount of dues or the manner of its assessment may be changed by the Union from time to time, and the Employer agrees to deduct and transmit same upon notification by the Union. Any such authorization by an Employee to deduct Union dues shall contain a provision required by law for revocation. Copies of any such authorization in the possession of the Union shall be deemed to be in the Employer's possession.

Any person subject to this provision performing work within the trade jurisdiction of the Union who has a financial interest in a company, direct or

41

indirect, which is signatory to the Agreement, whether the interest be as a sole proprietor, partner, shareholder, officer, or some similar financial interest, shall pay Union dues on the basis of 160 hours per month. Amounts so deducted shall be paid monthly to such depository or administrative office as the Union shall designate. In addition to the dues calculated on the number of hours worked referred to herein, each Employee who is a member of the Union shall pay monthly base dues as the Union shall establish.

4.7. **Delinquency:** Should an Employer become delinquent in contributions to the Fringe Benefit Funds:

A. The Fund Trustees will notify the Employer, Employees and the Union in writing of the delinquency;

B. If the Employer does not pay all delinquencies when notified, the Union Employees shall contact their Union Business Representatives immediately so that the Union can properly direct the Employees on what action shall be necessary to expedite payment and avoid loss of insurance and other benefits.

C. Whenever contributions are not received in the Fund office on or before the first day (1st) of the second month following the month during which hours were worked requiring such contributions, the Employer shall pay two percent (2%) of the delinquent amount as liquidated damages.

D. Whenever contributions are not received in the Fund office by the first (1st) day of the third month following the month during which hours were worked requiring such contributions, the Employer shall pay an additional five percent (5%) of the delinquent amount as liquidated damages.

Also, the attorney will automatically commence legal process for collection of any monies not paid by the first day of the fourth month sixty (60) days late.

E. Any delinquency outstanding for more than three months shall be subject to additional liquidated damages of one percent (1%) per month, not to exceed 20% total.

F. Interest shall also accrue on any contributions delinquent more than two months, at the rate of twelve percent (12%) per annum.

Also, the attorney will automatically commence legal process for collection of any monies not paid by the first day of the fourth month sixty (60) days late).

Copies of the Collective Bargaining Agreement and all renewal or extension agreement will be furnished promptly to the Pension Fund office.

42

4.8. **Audit.** Each Employer hereby agrees to provide for inspection and audit upon request duly authorized by the Trustee of any of the Joint Funds, such books and records as may be necessary to determine whether the Employee is making all payments and contributions required by this Agreement. In the event that the audit shall reveal a deficiency in the Employer's payments and contributions, the cost of the audit shall be borne by the Employer, but in no case shall the Employer's cost exceed the amount of the deficiency. If the Employer's records are so incomplete to render it impossible to complete an audit, the Fringe Benefit Funds shall have the right to estimate the amount of contributions due and the burden of proof shall shift to the Employer to prove the exact amount of such contributions that were actually due.

4.9. **Contributions.** The Employer shall, on or before the fifteenth (15th) day of each month, make the fringe benefit contributions required hereunder to the respective Trust Funds accompanied by such reports as the Trustees may designate. The Employers specifically understands that, in addition to all of the other terms and conditions contained herein, the Agreement and Declaration of Trust establishing each of the Fringe Benefit Funds empowers the Trustees to require the Employer to post cash as a security deposit in an amount set by the Trustees in a specified circumstance and to impose liquidated damages for failure of any Employer to make the required contributions in the proper amount when due. The Employer and the Union have determined that the following provides a reasonable forecast of just compensation for the harm caused to the Fund by late contributions.

## ARTICLE V
## WORK OUTSIDE OF UNION JURISDICTION

5.1. **Other Agreements.** When the Employer has any work specified in Article I of this Agreement to be performed outside of the area covered by this Agreement and within the area covered by an agreement with another affiliate of the International Union of Bricklayers and Allied Craftworkers, the Employer agrees to abide by the full terms and conditions of the Agreement in effect in the jobsite area.

5.2. **Portability.** Employees covered by this Agreement, who are sent to projects outside of the area covered by this Agreement, shall be paid at least the applicable established minimum wage scale and fringe benefits specified in Article IV but in no case less than the established minimum wages and fringes of the local Agreement covering the territory in which such work is being performed plus all contributions specified in the jobsite local Agreement. The Employer shall in all other matters be governed by provisions established in the jobsite local Agreement. If Employees are sent to work on a project in an area where there is no local Agreement covering the work specified in Article I of this Agreement, or the Employer has not signed the local Agreement, the full terms and conditions of this Agreement shall apply.

43

## ARTICLE VI
## LEGALITY OF AGREEMENT

It is further agreed by and between the parties hereto, that if any Federal or State Court shall at any time decide that any clause or clauses of this Agreement is or are void or illegal, such clause or clauses shall be stricken out and the remaining portion of this Agreement shall be considered binding between the parties hereto.

## ARTICLE VII
## INDUSTRY STANDARDS

7.1.    Industry Standards.

A.    Certain conditions now prevailing in the ceramic tile, marble and terrazzo industries are beneficial to the growth of the industry and to maintaining high production and wage standards, with optimum quality of product. Also certain other conditions not now prevailing would likewise be beneficial and the parties hereto pledge to strive to achieve their realization. These conditions are deemed by the parties to be necessary for the maintenance and growth of the ceramic tile, marble and terrazzo industries and are, therefore, made a part of this Agreement.

B.    There shall be a standard and uniform written labor agreement embodying the terms and conditions of employment of the crafts covered herein by all members of the Associations. The Union recognized the Associations as the exclusive bargaining agent for their respective members within the geographic jurisdiction of the Union.

## ARTICLE VIII
## GRIEVANCE AND ARBITRATION

8.1.    Grievance and Arbitration.

A.    Should differences of any kind arise between any signatory contractor and the Union as to the interpretation, application or claimed breach of any of the terms of this Agreement, all such differences shall be submitted to the grievance procedure herein provided.

B.    Should any grievance arise, the same shall be taken up within five (5) days of the event giving rise to the grievance between the Business Manager at BAC Local 32 or his designated representative and the President of the appropriate Association or his designated representative.

C.    If any grievance is not settled as provided above, then either the Union or the Association may, within two regular working days, in writing submit the grievance to the Joint Arbitration Board herein provided for.

D.    The Joint Arbitration Board shall consist of three representatives from the appropriate Association and three representatives selected by the Union. Four members of the Board shall constitute a quorum and must be present at all hearings. Both sides shall always have equal voting strength.

44

E.    The duty of the Joint Arbitration Board shall be to hear all grievances submitted to the Committee within 48 hours of the submission. Decisions of the Joint Arbitration Board shall be reached by a majority vote of the entire committee. The decision of the Joint Arbitration Board shall be final and binding on the Association, the Employer, the Union and the Employee or Employees involved. In the event that the representatives are unable to reach a settlement, the dispute shall be submitted to an impartial third party agreed upon by the appropriate Association and Union Representatives for a final and binding decision.

## ARTICLE IX
## IMPERFECT WORK

9.1.    Imperfect Work.

A.    Tile Layers, Tile Finishers, Marble Masons, Marble Finishers, Terrazzo Workers and Terrazzo Finishers shall be held responsible for all imperfect work pertaining to their respective crafts. The Employer shall notify the Business Agent of Local No. 32 while the job is still in progress and not later than one week after the completion of the job of any claims to imperfect work.

B.    If the Joint Arbitration Board finds the complaint justified, they shall order the Employer involved to repair his work on his own time without delay.

## ARTICLE X
## RIGHTS OF PARTIES

10.1.    Rights of Parties.

A.    It is mutually agreed and understood that the Union will not enter any agreements, oral or written, with any Employer who is not a member of any signatory Association but who is engaged in tile, marble or terrazzo work as done by members of the Association, in which the terms and conditions of such agreement are more favorable to such Employer than the terms and conditions contained in the Agreement with these Associations.

B.    In the event the Union enters into any Agreement with another Employer or Employers containing more favorable terms and/or conditions (including wage rates) than those contained herein, the Union agrees that such more favorable terms and conditions shall automatically be extended to Employers covered by this Agreement.

C.    Any Union member working as an independent Contractor will execute a copy of this Agreement and an originally signed copy will be filed at the Fund Office. MESC and Workers Compensation account numbers will be written at the bottom of the signature page upon execution. Each Association will provide the Union with such information with respect to its members within 30 days of execution of this Agreement.

45

D. The Union will not permit its members to work for any Employer who fails to pay an amount at least equal to the Gross Wages stated in this Agreement.

10.2. Preservation of Work. In order to protect and preserve all work heretofore performed by the Employees covered by this Agreement, and to protect against loss of such work by device or subterfuge, it is agreed as follows:

Wherever the Employer performs work covered by this Agreement at any job site, under its own name or the name of another, as a corporation, partnership, or other business entity, including a joint venture, in which the Employer, its officers, directors, owners, partners or stockholders, have any ownership control, through family members or others, the terms and conditions of this Agreement shall be applicable to all such work.

## ARTICLE XI
## EMPLOYMENT

11.1. Employment

A. The existing National Agreement between the Tile Contractors Association of America, Inc., Marble Contractors Association of America, Inc., Terrazzo Contractors Association of America, Inc., and the Bricklayers, Allied Craftworkers International Union of America on Apprenticeship now in effect shall be and is hereby incorporated herein and made an integral part of this Agreement.

B. The Employers, when requiring additional men, may request same from the Union office. To care for emergency periods, when there are no Employees in a particular craft available, Improvers and/or Trainees respectively may be furnished by the Union during the emergency.

C. The parties will jointly take the necessary steps to comply with all laws and ordinances to assure, within the scope of this Agreement compliance with equal opportunity, and fair employment practice laws and ordinances and agree that the employment, referral or selection of all employees shall be on the basis of qualification without regard to race, color, sex, religion, national origin or ancestry.

D. This Agreement is a participatory agreement and accepted only by members either signing it or giving the Association a Power of Attorney for such purpose.

46

## ARTICLE XII
## TERMINATION

This Agreement shall remain in full force and effect through May 31, 2003, and shall continue thereafter unless there has been given not less than sixty (60) days and not more than eighty (80) days advance written notice by Registered or Certified Mail, by either party hereto, of the desire to modify and amend this Agreement through negotiations. In the absence of such notice, this Agreement shall renew from year to year thereafter until the aforesaid advance notice is given. This contract shall renew on the same terms and conditions as are established in the applicable trade by the area-wide negotiated contracts with the Associations and it is agreed that this Agreement shall be extended for the life of such newly negotiated contract.

In order to reopen the Agreement for renegotiation of wages only as of June 1, 2001 and June 1, 2002, either party may give written notice to the other party of its desire to renegotiate the wage package at least 60 days in advance of June 1, 2001 or June 1, 2002 dates. If the wage reopener issues are resolved during the June 1, 2001 negotiations, there will be no limited wage reopener on June 1, 2002. If neither party gives notice of wage reopener to the other, this Agreement shall continue until May 31, 2003, or thereafter as provided in this Agreement. If notice is given for wage reopener and no agreement is reached on wages, either party may resort to economic pressure, either through strike or lock-out.

47

JUN-07-99 02:07P Tile Terrazzo & Marble 32 810 7576094          P.03

ARCHITECTUAL/SOUTHWEST STONE CO
295205 0032 MI 2

**IN WITNESS AN TESTIMONY:** of the provisions and terms mutually agreed
upon and specified herein, the duly authorized representatives of the parties, hereby
affix their signatures

BAC LOCAL NO. 32 OF MICHIGAN

Dated __3/17/99__          By: _John Mason_
                               Business Manager

We the undersigned have read and understood the terms and conditions of the
foregoing Labor Agreement and hereby agree to be bound thereto.

_Dace Goers_          ARCHITECTUAL/ SOUTHWEST
Signature      Date 3/17    Name of Company      STONE CO

                            24439 CARLYSLE
M E S C NO                  Address

                            DEARBORN, MI 48126
Workers Compensation Policy NO   City, State, Zip

Federal IO NO.              Principal Officers:

                            SHARON GOERS
                            GARRET VAN HORN
__313-561-5505__
        Phone NO.
__313-294-8170__
        Fax NO

48

## MARBLE INDUSTRY CONTRACT ADOPTION AGREEMENT

The Union and the undersigned hereby adopt all of those terms of this Joint Tile, Marble and Terrazzo Collective Bargaining Agreement which pertain to the Marble Industry, including, but not limited to, the applicable wage and fringe benefit rates as set for in the Joint Agreement.

B.A.C. Local 32 Michigan

Dated: 6/1/98

By: _____
Business Manager

Association of Marble
Contractors And Finishers, INC.

Dated: 6-1-98

By: _____
Its Authorized Representative

50

## TERRAZZO INDUSTRY CONTRACT ADOPTION AGREEMENT

The Union and the undersigned hereby adopt all of those terms of this Joint Tile, Marble and Terrazzo Collective Bargaining Agreement which pertain to the Terrazzo Industry, including, but not limited to, the applicable wage and fringe benefit rates as set for in the Joint Agreement.

B.A.C. Local 32 Michigan

Dated: 6/1/98

By: _____
Business Manager

Detroit Terrazzo Contractors'
Association.

Dated: 6/1/98

By: _____
Its Authorized Representative

51

**Exhibit E**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|                                            |   |                                |
|--------------------------------------------|---|--------------------------------|
| JOHN FLYNN, et al.,                        | ) |                                |
|                                            | ) |                                |
| Plaintiffs,                                | ) |                                |
|                                            | ) |                                |
| v.                                         | ) | Civil Action No. 07-1369 (RWR) |
|                                            | ) |                                |
| ARCHITECTURAL SOUTHWEST STONE              | ) |                                |
| COMPANY LLC,                               | ) |                                |
|                                            | ) |                                |
| Defendant.                                 | ) |                                |
|                                            | ) |                                |

## JUDGMENT

The Summons and Complaint in this action having been duly served on the above-named Defendant on September 21, 2007, and the time for said Defendant to appear and defend herein having expired, and Defendant not having filed an Answer, and the Clerk having entered default, and the Plaintiffs having filed a declaration of a total amount due of $198,663.63 and Plaintiffs having moved for entry of judgment by default in that amount, it is hereby

ORDERED, ADJUDGED, AND DECREED that the final judgment in favor of Plaintiffs and against Defendant is hereby granted and ordered entered as the judgment in this action as follows:

1.      That Plaintiffs John Flynn, James Boland, Gerry O'Malley, Ken Lambert, Gerard Scarano. H. J. Bramlett, Eugene George, Paul Songer, Charles Verlardo, Matthew Aquiline, Gregory R. Hess, Michael Schmerbeck, Vincent Delazzero, and Benjamin Capp, all of whom are Trustees of, and sue on behalf of, the Bricklayers & Trowel Trades International Pension Fund ("IPF"), 620 F Street N.W., 7th Floor, Washington, DC 20004, and Jim Allen, Matthew Aquiline, Lon Best, James Boland, Ted Champ, Raymond Chapman, Vincent

2357342.01

Delazzero, Bruce Dexter, John Flynn, Eugene George, Gregory Hess, Fred Kinateder, Dan Kwiatkowski, Ken Lambert, Santo Lanzafame, Dick Lauber, William McConnell, Edward Navarro, Gerald O'Malley, John Phillips, Charles Raso, Mark Rose, Kevin Ryan, Gerard Scarano, Michael Schmerbeck, Paul Songer, Joseph Speranza and Fred Vautour, all of whom are Trustees of, and sue on behalf of, the International Masonry Institute ("IMI") recover from Defendant, Architectural Southwest Stone Company LLC, 27599 Schoolcraft Road, Livonia, Michigan 48150, the amount due of $198,663.63;

2.    That Architectural Southwest Stone Company LLC be directed to submit all monthly reports and contributions that may come due the Plaintiffs subsequent to the filing of this judgment;

3.    That Architectural Southwest Stone Company LLC, comply with its obligations to make timely and full contributions to the IPF; and

4.    That said judgment is without prejudice to the right of Plaintiffs to seek recovery of any past or future delinquencies, interest, damages and reasonable attorney's fees and costs that may be owing to the Plaintiffs from Architectural Southwest Stone Company LLC.

ORDERED, ADJUDGED AND DECREED that Plaintiffs have execution therefor.

Dated: _____, 2007          _____
                                        Richard W. Roberts
                                        United States District Judge

2

2357342.01

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JOHN FLYNN, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 07-1369 (RWR) |
| | ) |
| ARCHITECTURAL SOUTHWEST STONE | ) |
| COMPANY, LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## LOCAL RULE 7(K) STATEMENT

Pursuant to Local Rule 7(k), the following persons are entitled to be served with

orders, judgments and stipulations:

Ira R. Mitzner, Esquire
Dickstein Shapiro LLP
1825 Eye Street, N.W.
Washington, D.C. 20006-5403

Kelli Goers
Architectural Southwest Stone LLC
27599 Schoolcraft Road
Livonia, MI 48150

2357350.01

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion for Entry of Default Judgment with the Declaration of David F. Stupar, Declaration of Ira R. Mitzner, proposed Judgment, and Local Rule 7(k) Statement was served by first class mail, postage prepaid, this _5th_ day of _December_, upon:

> Kelli Goers
> Architectural Southwest Stone LLC
> 27599 Schoolcraft Road
> Livonia, MI 48150

Joanne Jackson

2357352.01